# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **Civil Action No. 4:22-cv-00636** |
| | § | |
| **GOOGLE LLC** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

# GOOGLE'S MOTION TO DISMISS

# **TABLE OF CONTENTS**

Page

I.   Introduction ........................................................................................................ 1

II.  Nature and stage of the proceeding ................................................................... 2

III. Statement of facts .............................................................................................. 2

IV.  Statement of the issues ...................................................................................... 3

V.   Standard of review ............................................................................................. 3

VI.  Summary of the Argument ................................................................................. 5

    A.   Texas does not allege a DTPA violation ................................................... 5

    B.   Texas has not sufficiently alleged that this suit is in the public interest ....... 5

VII. Argument ............................................................................................................ 5

    A.   Texas has not pled a cognizable violation of the DTPA ............................ 5

        1.   Texas' endorsement claims fail as a matter of law .......................... 5

        2.   Texas' other DTPA allegations are conclusory and unsupported ...... 9

            a.   Sections 17.46(b)(2) and (3) .................................................. 10

            b.   Sections 17.46(b)(5) and (7) .................................................. 10

            c.   Section 17.46(b)(24) ............................................................. 11

            d.   Section 17.46(a) .................................................................... 12

        3.   The DJs' statements are too general to violate the DTPA .............. 13

    B.   This suit is not in the public interest ......................................................... 14

        1.   Texas alleges no past harm ............................................................. 15

        2.   Texas alleges no ongoing harm     .................................................. 17

3.   Texas alleges no plausible risk of future harm   ........................... 17

VIII.   Conclusion ........................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 4, 9, 18

*Autohaus, Inc. v. Aguilar*,
   794 S.W.2d 459 (Tex. App.–Dallas 1990, writ denied) ............................................ 13

*AXA Corp. Sols. v. Lectrus Corp.*,
   No. 4:15-CV-3606, 2016 WL 6601049 (S.D. Tex. Nov. 8, 2016) ................................ 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 4, 9

*Bradford v. Vento*,
   48 S.W.3d 749 (Tex. 2001) .......................................................................................... 13

*Brown v. Tarbert, LLC*,
   616 S.W.3d 159 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) ...................... 16

*City of Marshall, Tex. v. Bryant Air Conditioning Co.*,
   650 F.2d 724 (5th Cir. 1981) ...................................................................................... 16

*Coleman v. Dean*,
   No. 04-14-00811-CV, 2015 WL 5156921 (Tex. App.—San Antonio
   Sept. 2, 2015, pet. dism'd) ........................................................................................ 10

*Cuvillier v. Taylor*,
   503 F.3d 397 (5th Cir. 2007) ........................................................................................ 4

*Dal-Chrome Co. v. Brenntag Sw., Inc.*,
   183 S.W.3d 133 (Tex. App.—Dallas 2006, no pet.) .................................................... 11

*Davis v. Byers Volvo*,
   4th Dist. Pike No. 11CA817, 2012-Ohio-882, 2012 WL 691757 ................................ 8

*Doe v. Boys Club of Greater Dallas, Inc.*,
   907 S.W.2d 472 (Tex. 1995) ...................................................................................... 16

*Douglas v. Delp*,
   987 S.W.2d 879 (Tex. 1999) ...................................................................................... 13

*F.T.C. v. Garvey*,
   383 F.3d 891 (9th Cir. 2004) .................................................................. 6, 7, 8

*F.T.C. v. Garvey*,
   No. 00-9358 GAF(CXW), 2002 WL 31744639, (C.D. Cal. Nov. 25,
   2002) .................................................................................................................. 7

*First Title Co. of Waco v. Garrett*,
   860 S.W.2d 74 (Tex. 1993)................................................................................ 11

*Gentilello v. Rege*,
   627 F.3d 540 (5th Cir. 2010) ............................................................................. 4

*Household Retail Servs., Inc. v. State*,
   No. 04-00-00734-CV, 2001 WL 984779 (Tex. App.—San Antonio Aug.
   29, 2001, no pet.) ...................................................................................... 14, 17

*Johnson v. Daimler Trucks N. Am., LLC*,
   No. A-20-CV-00385-JRN, 2020 WL 6875269 (W.D. Tex. Nov. 13,
   2020) ............................................................................................................... 16

*Liberty Bank, F.S.B. v. Etter*,
   No. 02-12-00337-CV, 2013 WL 5302719 (Tex. App.—Fort Worth Sept.
   19, 2013, pet. denied)................................................................................. 14, 15

*Matter of Life Partners Holdings, Inc.*,
   926 F.3d 103 (5th Cir. 2019) ............................................................................. 9

*Mac Haik Chevrolet Ltd. v. Diaz*,
   No. 01-09-00708-CV, 2011 WL 286124 (Tex. App.—Houston [1st
   Dist.] Jan. 27, 2011, pet. denied) .................................................................... 14

*Metro Allied Ins. Agency, Inc. v. Lin*,
   304 S.W.3d 830 (Tex. 2009)............................................................................. 16

*Milner v. Biggs*,
   No. 2:10-CV-904, 2013 WL 1401370 (S.D. Ohio Apr. 5, 2013), *aff'd*,
   566 F. App'x 410 (6th Cir. 2014) ...................................................................... 8

*Ojeda de Toca v. Wise*,
   748 S.W.2d 449 (Tex. 1988)............................................................................. 12

*Pennington v. Singleton*,
   606 S.W.2d 682 (Tex. 1980)............................................................................. 14

*Pizza Hut, Inc. v. Papa John's Intern., Inc.*,
227 F.3d 489 (5th Cir. 2000) ................................................................. 8

*Pope v. Rollins Protective Servs. Co.*,
703 F.2d 197 (5th Cir. 1983) ................................................................. 10

*PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*,
146 S.W.3d 79 (Tex. 2004) ................................................................... 17

*Puckett v. United States*,
82 F. Supp. 2d 660 (S.D. Tex. 1999), *aff'd sub nom. Puckett v. Comm'r*,
213 F.3d 636 (5th Cir. 2000) ................................................................. 3

*Quintanilla v. K-Bin, Inc.*,
993 F. Supp. 560 (S.D. Tex. 1998) ........................................................ 4

*Reeves v. Wells Fargo Bank, N.A.*,
No. EP-13-CV-318-DCG, 2014 WL 12492038 (W.D. Tex. Apr. 14,
2014) ..................................................................................................... 4

*Robinson v. Preston Chrysler-Plymouth, Inc.*,
633 S.W.2d 500 (Tex. 1982) ................................................................. 13

*State v. Elite Med, L.L.C.*,
No. 04-11-00109-CV, 2011 WL 3610414 (Tex. App.—San Antonio
Aug. 17, 2011, no pet.) ......................................................................... 17

*Tony Gullo Motors I, L.P. v. Chapa*,
212 S.W.3d 299 (Tex. 2006) .......................................................... 11, 13

**Statutes**

FTC Act Section 5, 15 U.S.C. §45 ............................................................. 6, 7

Tex. Bus. & Com. Code §17.46(b)(2), (3) ................................................. 10

Tex. Bus. & Com. Code §17.46(b)(5), (7) ............................................. 10, 11

Tex. Bus. & Com. Code §17.46(b)(24) ................................................. 11, 12

Tex. Bus. & Com. Code §17.46(c)(1) ....................................................... 6, 12

Tex. Bus. & Com. Code §17.47 ................................................ 1, 14, 15, 18

Tex. Bus. & Com. Code §17.50(a) ............................................................. 16

## I.   Introduction

The sole basis of Texas' Deceptive Trade Practices Act ("DTPA") suit against Google LLC is the allegation that radio DJs, speaking in the first person from scripts in obvious advertisements, promoted features of Google's Pixel 4 phone (e.g., "I love" the feature) that they had not themselves used.  To Texas, that was a misleading "endorsement" of the phones.  To a consumer—and, more importantly, according to on-point precedent— such statements are lawful and unremarkable ad copy reflecting *Google's*, not the DJs', views.  Texas' claim therefore fails.  And not only does Texas lack a cause of action, it cannot make the independently required showing that its lawsuit serves the public interest. Texas does not allege that the advertisements misdescribed or misrepresented the Pixel 4 or its features, or even that a single consumer bought a phone on the basis of these advertisements.  Nor does Texas allege any risk of future violations or future consumer harm because the conduct complained of ended more than two years ago.

Under the DTPA, the Texas Attorney General may bring suit only if two conditions are met: (1) the defendant has engaged in an act or practice declared unlawful by the DTPA, and (2) the suit would be in the public interest.  Tex. Bus. & Com. Code §17.47.  Texas fails to satisfy either element, and dismissal with prejudice is appropriate.

First, Texas has not alleged a violation of the DTPA.  The Original Petition ("Petition") alleges that utterly conventional radio DJ advertisements were misleading personal "endorsements."  But there is no allegation that the phones were misdescribed. And on-point case law holds that a spokesperson reading obvious ad copy—even first-

person ad copy—is not treated as a personal endorsement.  That is for good reason: consumers generally understand that DJs regularly promote products on behalf of sponsors.

Second, this suit is not in the public interest.  The DTPA's public interest requirement requires a showing of past harm requiring a remedy, ongoing harm requiring judicial intervention, or a risk of future harm requiring corrective behavior.  But Texas alleges none of those.  Indeed, Texas alleges no harm *at all* (past, present or future), makes no factually supported allegation of future harm, and indeed *acknowledges* that the conduct it complains of stopped in early 2020, well before these proceedings began.  This lawsuit serves no public interest at all.  For that reason, too, dismissal with prejudice is appropriate.

## II.    Nature and stage of the proceeding

On January 19, 2022, Texas filed the Petition in the 457th Judicial District of Montgomery County, Texas.  Dkt. 1-1 at 4 of 33 ("Pet.").  Google filed an answer on February 22, 2022, generally denying Texas' claims and including the defenses that Texas failed to state a claim and lacks standing.  Dkt. 1-1 at 27 of 33.  Google removed to this Court on February 25, 2022.  Dkt. 1.  Texas filed a motion to remand on March 15, 2022.  Dkt. 9.  An initial pretrial conference is set for April 13, 2022.  Dkt. 4.

## III.   Statement of facts

The Petition alleges that, in October 2019, Google's media buying agent hired non-party iHeartMedia to have iHeart radio DJs record and broadcast advertisements about Google's Pixel 4 smartphone ("Pixel 4") on iHeartRadio stations, including in the Houston and Dallas-Fort Worth markets.  Pet. ¶ 12.  As is customary in advertising, Google provided a script for the DJs, and the script included first-person language, such as "[i]t's my favorite

phone camera out there." *Id.* ¶¶ 13–16.

The script stated that the Pixel 4 takes "studio-like" photos, takes photos in low-light with the "Night Sight Mode" camera feature, and has the "new voice activated Google Assistant" feature. *Id.* ¶ 15–16. Texas alleges that Google did not provide the DJs with Pixel 4s before the advertisements were recorded and aired. *Id.* ¶¶ 20, 24. The advertisements aired for 36 days, from October 28 to December 2, 2019. *Id.* ¶ 21.

Texas does not allege that the ads contained any deceptive statements about the Pixel 4 itself or its features. The Petition also does not allege that any Texas resident purchased a Pixel 4 because of the advertisements or that any Texan suffered, or will suffer, any harm. Nor does Texas allege facts suggesting any ongoing, or risk of a future, violation. In fact, Texas alleges that when Google hired iHeartMedia again to record advertisements promoting the Pixel 4 in markets outside of Texas just a month after the Texas campaign ended, Google provided phones for the DJs to use. *Id.* ¶ 25.

## IV.   Statement of the issues

This case should be dismissed due to Texas' failure to allege any facts that establish the required elements of a DTPA claim brought by the Attorney General's office: (1) that the statements at issue violated the DTPA and (2) that the suit is in the public interest.

## V.   Standard of review

When a case is removed to federal court after the defendant has filed an answer in state court, a motion to dismiss is timely where, as here, the defendant's answer included the defense raised in the motion. *Puckett v. United States*, 82 F. Supp. 2d 660, 663 (S.D. Tex. 1999), *aff'd sub nom. Puckett v. Comm'r*, 213 F.3d 636 (5th Cir. 2000).

The Court can consider such motions under Rule 12(b)(6). *See Reeves v. Wells Fargo Bank, N.A.*, No. EP-13-CV-318-DCG, 2014 WL 12492038, at *3 (W.D. Tex. Apr. 14, 2014) (treating post-removal motion to dismiss as timely Rule 12(b)(6) motion where state court answer was previously filed); *see also Quintanilla v. K-Bin, Inc.*, 993 F. Supp. 560, 562 (S.D. Tex. 1998) (considering post-answer motion to dismiss as Rule 12(b)(6) motion where answer had raised defense of failure to state a claim). Alternatively, the Court can consider a post-answer motion under Rule 12(c). *See AXA Corp. Sols. v. Lectrus Corp.*, No. 4:15-CV-3606, 2016 WL 6601049, at *2 (S.D. Tex. Nov. 8, 2016). The standard is the same in either case. *See Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010). A Rule 12(c) motion is timely if it is filed "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c).

Rule 12(b)(6) permits the defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted." To survive a motion to dismiss, the affirmative pleading "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Critically, allegations must contain factual content; "mere conclusions[] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). A pleading must therefore contain enough facts to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.

## VI.     Summary of the Argument

### A.  Texas does not allege a DTPA violation

Texas alleges no DTPA violation.  Rather than misleading "endorsements" reflecting the DJs' personal beliefs, the ads at issue are classic examples of obvious spokesperson statements that consumers recognize reflect the advertiser's, not the speaker's, beliefs.  The first-person language in the ads does not alter that conclusion, as federal law (as incorporated by the DTPA) confirms.

### B.  Texas has not sufficiently alleged that this suit is in the public interest

This suit is also not in the public interest.  Texas has not alleged a single instance of consumer harm requiring a remedy or requiring a state suit to avoid a multiplicity of consumer lawsuits.  Texas also alleges no ongoing violation, so there is no need for judicial intervention.  And Texas' conclusory allegation that Google "will continue to engage" in unlawful conduct (even assuming it ever did) lacks any support in the Petition; on the contrary, Texas itself alleges that the conduct complained of lasted 36 days and then, when Google ran a similar campaign the very next month, Google provided Pixel 4s to the radio DJs.

## VII.    Argument

### A.  Texas has not pled a cognizable violation of the DTPA

#### 1.  Texas' endorsement claims fail as a matter of law

The only allegations Texas purports to develop are its claims that Google engaged in "false, misleading, and deceptive acts" by airing advertisements where alleged

"endorser[s]" said that they had used the Pixel 4 even though they allegedly had not.  *See* Pet. ¶ 28(a)-(e).  But the law governing "endorsers" does not apply here.

The DTPA states that courts interpreting it should be "guided by . . . interpretations" of "Section 5(a)(1) of the Federal Trade Commission Act."  Tex. Bus. & Com. Code §17.46(c)(1).  And well-worn federal precedent holds that an "endorsement" is an advertising message that "consumers are ***likely to believe*** reflects the opinions, beliefs, findings, or experience of a party other than the sponsoring advertiser."  *F.T.C. v. Garvey*, 383 F.3d 891, 903 (9th Cir. 2004) (emphasis added; internal quotations omitted) (analyzing advertising statements under Section 5 of the FTC Act).  A personal endorsement by definition reflects the speaker's *own* opinions about the product.  *See id.*  By contrast, conventional ads routinely rely on a spokesperson to convey *the advertiser's* views, not the speaker's own views and experiences.

Under that settled law, on the facts alleged here, the DJs' statements were not endorsements at all, but rather obvious advertisements by spokespersons, who consumers understand are not stating their own views but are merely stating the views of an advertiser. Consumers understand that the recorded ads that air in between segments of music and DJ chatter are paid advertisements where DJs convey sponsors' views, not their own.  It is an advertising format nearly as old as the medium itself.

The advertisement's "first-person" narrative style (Pet. ¶15) does not turn this obvious ad into a personal endorsement.  In *Garvey*, the Ninth Circuit considered whether former baseball player Steve Garvey's first-person statements about the Enforma weight-loss product in an infomercial constituted a deceptive "endorsement" that violated Section

5 of the FTC Act.  383 F.3d at 904.  There, as occurred here, Garvey used first-person language to describe the product (*e.g.*, "I love this"); and there, as also occurred here, Garvey did so reading from a pre-set script.  *Id.* at 895.

The district court found that Garvey's first-person statements in the infomercial did not constitute an endorsement and did not violate Section 5 of the FTC Act.  In particular, the court credited testimony highlighting Garvey's lack of expertise concerning weight-loss products.  *See F.T.C. v. Garvey*, No. 00-9358 GAF(CXW), 2002 WL 31744639, at *6 (C.D. Cal. Nov. 25, 2002) (finding the FTC failed to present "any facts establishing that consumers are likely to believe that Garvey's statements" reflect his own beliefs where expert testified that it was "highly unlikely that the average viewer would believe that Garvey was speaking from personal experience or knowledge" where "Garvey [wa]s depicted as a naive person who is learning about" the product).  The Ninth Circuit affirmed. *Garvey*, 383 F.3d 891.

*Garvey* is decisive here.  Just as Garvey's first-person statements about Enforma were understood to be Enforma's views and not Garvey's, consumers are overwhelmingly likely to understand that a radio DJ reading an obvious script during a commercial break is being paid to convey the advertiser's views, rather than his own.  Indeed, Texas' Petition itself highlights the scripted, overtly commercial tenor of the scripts: "It's my favorite phone camera out there, especially in low light, ***thanks to Night Sight Mode.***" Pet. ¶ 16 (emphasis added).  That is the language of scripted sponsorship, not personal preference.

If anything, *Garvey* presented a closer question than this case because the claims in *Garvey* were made during a long-form infomercial, a format suited to personal

endorsements. By contrast, the statements here were made during "recorded advertisements" (Pet. ¶ 21), separated from the live patter and music that constitute normal radio programming. As the Fifth Circuit has acknowledged, consumers are fully capable of distinguishing between advertisements and reality. *See, e.g.*, *Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489, 498 (5th Cir. 2000) ("This simple statement, 'Better Pizza.,' epitomizes the exaggerated advertising, blustering, and boasting by a manufacturer upon which no consumer would reasonably rely.").

The fact that these statements were made by radio personalities with no alleged mobile-phone expertise further confirms that they are not "endorsements." *See Davis v. Byers Volvo*, 4th Dist. Pike No. 11CA817, 2012-Ohio-882, 2012 WL 691757, at *16 (local celebrity's appearance in advertisement for car dealership was not "endorsement" as defined by FTC where court saw "no logical reason . . . why a reasonable consumer might believe that a former college football player and current television football analyst may possess any special knowledge about motor vehicles"). *See also Milner v. Biggs*, No. 2:10-CV-904, 2013 WL 1401370, at *18 (S.D. Ohio Apr. 5, 2013), *aff'd*, 566 F. App'x 410 (6th Cir. 2014) (describing deceptive-practices claims in *Davis v. Byers Volvo* as "frivolous"). *Garvey* relied on this same distinction, finding no "endorsement" where Garvey's naivete rendered it implausible that consumers would believe he was expressing his own views as to the capabilities of the product. *See* 2002 WL 31744639, at *6.

The distinction is intuitive. If a professional golfer promotes a brand of golf ball (a product he presumably has highly qualified opinions about), consumers could conclude the golfer is rendering his own expert opinion. His own experience with the product is

therefore highly relevant.  By contrast, when a paid spokesperson reads a script, consumers recognize that the spokesperson is delivering the advertiser's message and may not be stating their own personal preferences.  What matters in those cases is that the products themselves are described accurately—and Texas alleges no misrepresentation about the Pixel 4 itself.

The distinction between "endorsements" and conventional advertisements is critical.  Texas specifically alleges that the DJs' statements were *endorsements*, rather than conventional advertisements, *see* Pet. ¶ 28, because statements made by conventional spokespersons are understood by consumers to be merely delivering the views of their sponsor corporation.

Because Texas has failed to allege that the DJs' statements are anything other than obvious advertisements, there were no personal "endorsements" here and Texas' claims fail as a matter of law.

### 2.  Texas' other DTPA allegations are conclusory and unsupported

In barely a sentence each, Texas further alleges that Google violated a litany of DTPA provisions.  Pet. ¶ 27.  Conclusory allegations like these, devoid of factual support, are insufficient to support a claim for relief.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 570 (A pleading requires more than "labels and conclusions"); *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 122 (5th Cir. 2019) (affirming dismissal of claim because "allegations are largely conclusory").

### a.  Sections 17.46(b)(2) and (3)

Section 17.46(b)(2) prohibits "causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services." Tex. Bus. & Com. Code §17.46(b)(2).  Texas courts apply Section 17.46(b)(2) to address scenarios where sellers cause misunderstandings and confusion about the certification of goods or services themselves—*e.g.*, claims that a food is "Certified Organic." *See Coleman v. Dean*, No. 04-14-00811-CV, 2015 WL 5156921, at *5 (Tex. App.—San Antonio Sept. 2, 2015, pet. dism'd) (affirming jury finding that defendants violated Section 17.46(b)(2) where home construction was misrepresented as being completed by an affiliate of a well-known national company).  Section 17.46(b)(3) similarly prohibits "confusion or misunderstanding regarding the affiliation, connection, or association with, or certification by, another." *See* Tex. Bus. & Com. Code §17.46(b)(3).  This provision, too, concerns misrepresentations about the product itself and its connections to other businesses or services. *See, e.g., Pope v. Rollins Protective Servs. Co.*, 703 F.2d 197, 200 (5th Cir. 1983) (affirming Section 17.46(b)(3) liability where alarm company misrepresented home alarm system's telephonic connection to on-call center). Texas makes no factual allegations of this sort.   (And to the extent either of these provisions is read to apply to "endorsements," the claims fail for the reasons described above.)

### b.  Sections 17.46(b)(5) and (7)

Sections 17.46(b)(5) and (7) prohibit "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection

which the person does not," or "that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Tex. Bus. & Com. Code §17.46(b)(5), (7).  These provisions are directed at misrepresentations of the quality of a good or service itself.  *See, e.g., First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 76–77, 80 (Tex. 1993) (title company properly found liable under Sections 17.46(b)(5) and (7) for misrepresenting that property had no deed restrictions); *Dal-Chrome Co. v. Brenntag Sw., Inc.*, 183 S.W.3d 133, 139–140 (Tex. App.—Dallas 2006, no pet.) (affirming jury verdict that chemical supplier violated Sections 17.46(b)(5) and (7) by delivering contaminated acid after promising to meet quality specifications).  Texas makes no factual claims concerning misrepresentations about the Pixel 4 itself or any of the features described in the ads.  Accordingly, Texas has not stated a claim under these DTPA provisions.

### c.  Section 17.46(b)(24)

Texas has failed to state a claim under Section 17.46(b)(24) because Google did not "fail[] to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."  *See* Tex. Bus. & Com. Code §17.46(b)(24).  Cases finding violations of Section 17.46(b)(24) deal with consumers who have purchased products or entered into agreements based upon a seller's failure to disclose material information about the sale or product itself.  *See, e.g., Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 305 (Tex. 2006) (car dealership's representation that customer would receive premium-

model car, when in fact she was going to get base model, violated Section 17.46(b)(24)); *Ojeda de Toca v. Wise*, 748 S.W.2d 449, 450 (Tex. 1988) (holding jury's findings sufficient to support liability under Section 17.46(b)(24)—then (b)(23)—when seller did not inform buyer that property was subject to city's demolition order).

Texas fails to allege a Section 17.46(b)(24) claim for two independent reasons. First, as the case law demonstrates, Section 17.46(b)(24) is addressed to withheld information concerning products themselves, and, as noted, Texas alleges no such withholding. Second, Texas does not allege facts making it plausible to conclude that Google intentionally withheld any information from consumers to induce them to buy a Pixel 4. Indeed, Texas does not allege that a single consumer purchased a Pixel 4 in response to the recorded ads—much less that any consumer purchased a phone *that she otherwise would not have purchased* had she known whether a non-expert radio DJ took photos at night.

### d. Section 17.46(a)

Section 17.46(a) addresses generally false, deceptive, or misleading practices. Rather than provide a blank check to the Attorney General to bring any suit imaginable, the statute directs that interpretations of subsection (a) be "guided by" the provisions listed in Section 17.46(b). Tex. Bus. & Com. Code §17.46(c)(1). For the same reasons Texas has not stated a claim under Section 17.46(b), it has also failed to allege any "false, misleading, or deceptive acts or practices" under Section 17.46(a). As explained above, there was no deception here. Instead, there were simply conventional radio advertisements that accurately described the Pixel 4.

12

### 3.   The DJs' statements are too general to violate the DTPA

Even if the DJs' statements could be viewed as  personal "endorsements," the facts alleged remain insufficient to state a claim under the DTPA.  The only representations that Texas alleges are false are the DJs' statements that they personally used the phone, which are general statements that do not tout the phone's functionality or effectiveness and, thus, are not DTPA violations.

Texas courts routinely find overly general statements to be nonactionable.  *See Bradford v. Vento*, 48 S.W.3d 749, 759 (Tex. 2001) (lessor's statement that he would "take care" of lessee's long-term lease concerns is "simply too vague to provide a standard for the jury to use to measure the accuracy of the representation; it is therefore nonactionable."); *Douglas v. Delp*, 987 S.W.2d 879, 886 (Tex. 1999) (attorney's representation that agreement would protect client's interests was too vague to support DTPA liability where attorney made no statements about the agreement's characteristics or benefits); *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 464–65 (Tex. App.–Dallas 1990, writ denied) (finding salesman's statement containing words such as "best," "probably," and "joked" too general to be actionable misrepresentation).  *See also Douglas*, 987 S.W.2d at 886 (emphasizing the DTPA is "intended to protect consumers against misrepresentations of material fact").

Texas courts properly apply the DTPA if sellers make specific misrepresentations about the characteristics of a product in a way that harms consumers.  *See, e.g., Tony Gullo Motors I, L.P.,* 212 S.W.3d at 305 (car dealership failed to disclose that customer would receive base-model car instead of premium model she contracted for); *Robinson v. Preston*

*Chrysler-Plymouth, Inc.*, 633 S.W.2d 500, 501 (Tex. 1982) (consumer received used car instead of advertised new car); *Pennington v. Singleton*, 606 S.W.2d 682, 685 (Tex. 1980) (consumer purchased boat discovered to be in bad condition despite seller's statements to the contrary); *Mac Haik Chevrolet Ltd. v. Diaz*, No. 01-09-00708-CV, 2011 WL 286124, at *6-7 (Tex. App.—Houston [1st Dist.] Jan. 27, 2011, pet. denied) (consumers purchased "low-mileage" car that in fact had high mileage). Here, Texas' allegations are limited to the DJs' statements that they had personally used the Pixel 4 phone. These assertions were general statements that did not make any representations about the quality or qualities of the product itself. Accordingly, the DJs' statements are not actionable under the DTPA, and Texas' claims should be dismissed with prejudice.

### B. This suit is not in the public interest

In order to bring suit under the DTPA, Texas must also demonstrate that the suit serves the public interest. Tex. Bus. & Com. Code §17.47(a). For a suit to be in the public interest, typically one of three things must be alleged: past harm, ongoing harm, or a risk of future harm. *See, e.g., Liberty Bank, F.S.B. v. Etter*, No. 02-12-00337-CV, 2013 WL 5302719, at *4 (Tex. App.—Fort Worth Sept. 19, 2013, pet. denied) (Attorney General is "specifically authorized to bring an action in the public interest" and "did just that" by bringing separate action against defendant to stop collection on fraudulent agreements from over 1,000 small businesses); *Household Retail Servs., Inc. v. State*, No. 04-00-00734-CV, 2001 WL 984779, at *1–3 (Tex. App.—San Antonio Aug. 29, 2001, no pet.) (Attorney General met statutory requirements, including service of the public interest, when it

brought suit to stop banks from sending misleading letters to credit card customers attempting to deprive customers of their rights).

Section 17.47, the very provision from which Texas claims its authority to sue Google, contemplates that such suits will address past, ongoing, or future harm to consumers. *See* Tex. Bus. & Com. Code § 17.47(a) (Attorney General can bring suit to "restrain" DTPA violation where "proceedings would be in the public interest."); *id.* § 17.47(b) ("The court may issue temporary restraining orders, temporary or permanent injunctions to **restrain** and **prevent violations** of this subchapter . . . .") (emphases added); *id.* § 17.47(d) ("The court may make such additional orders or judgments as are necessary to **compensate** identifiable persons for **actual damages** or to **restore money or property**, real or personal, which may have been acquired by means of any unlawful act or practice.") (emphases added). Texas alleges none of these situations.

### 1. Texas alleges no past harm

Texas does not allege that any claims about the Pixel 4s themselves—for example, about their ability to take photos at night—made in the advertisements were untrue or deceptive. Texas does not even allege that a single consumer purchased a Pixel 4 because of a representation that a DJ had personally used the phone. It is simply implausible that the alleged misrepresentations caused any consumer harm.

The lack of any allegation of consumer harm eliminates a common basis for asserting public interest—namely, avoiding a multiplicity of individual lawsuits. *See, e.g., Liberty Bank*, 2013 WL 5302719, at *4 (Texas Attorney General suit on behalf of small businesses victimized by fraud and deceptive acts served DTPA purpose of preventing a multiplicity

of suits).   Here, that purpose is not furthered at all because Texas does not allege the existence of a single consumer who could bring a case.  Indeed, a consumer bringing a claim under the DTPA must show (among other things) that the defendants' acts were a "producing cause" of their alleged damages. Tex. Bus. & Com. Code §17.50(a); *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995).  "A producing cause is a substantial factor which brings about the injury and without which the injury would not have occurred."  *Doe*, 907 S.W.2d at 481.  Here, there is no injury at all.

Texas courts routinely dismiss consumer suits brought under the DTPA where the consumer fails to demonstrate that the allegedly deceptive statements were the cause of her injuries.  *See, e.g., City of Marshall, Tex. v. Bryant Air Conditioning Co.*, 650 F.2d 724, 726 (5th Cir. 1981) (dismissing DTPA claims—after reversing jury verdict—based on plaintiff's failure to show damages caused by alleged DTPA violation); *Johnson v. Daimler Trucks N. Am., LLC*, No. A-20-CV-00385-JRN, 2020 WL 6875269, at *3–4 (W.D. Tex. Nov. 13, 2020) (dismissing DTPA claims because plaintiff failed to plead damages were caused by alleged misrepresentations); *Metro Allied Ins. Agency, Inc. v. Lin*, 304 S.W.3d 830, 838 (Tex. 2009) (reinstating judgment notwithstanding the verdict in favor of defendant based on plaintiff's failure to show evidence that DTPA violation caused damages); *Brown v. Tarbert, LLC*, 616 S.W.3d 159, 168 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (affirming dismissal of DTPA claims based on no-evidence challenge to "core" element that defendant's conduct be "producing cause" of plaintiff's injury).

Because the Petition does not allege that the DJs' statements resulted in any harm to any consumers at all, there are no consumers who could bring suit on these facts.  As a

result, Texas' suit does not serve the public interest by "prevent[ing] a multiplicity of suits." *See Household Retail Servs., Inc.*, 2001 WL 984779, at *3 (holding State established public need where injunction "serve[d] to maintain the status quo while the parties and the courts determine the best course of action to remedy what may potentially be thousands of claims."). *See also PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 84 (Tex. 2004) ("The DTPA's primary goal was to protect consumers by encouraging them to bring consumer complaints.").

### 2. Texas alleges no ongoing harm

Texas has not alleged that any unlawful conduct is ongoing more than two years after the 36-day advertising campaign at issue. On the contrary, the Petition itself alleges that the allegedly misleading advertisements in Texas ended in 2019 and that the follow-on campaign proceeded without the complained-of conduct. Pet. ¶ 25. There is thus no public interest in (or justification for) a court ruling ordering Google to cease conduct that ended long before these proceedings began. *See State v. Elite Med, L.L.C.*, No. 04-11-00109-CV, 2011 WL 3610414, at *5 (Tex. App.—San Antonio Aug. 17, 2011, no pet.) (affirming trial court's refusal to enter temporary injunction and holding that "the trial court could have reasonably concluded that an injunction was not necessary to protect the public interest" where evidence existed that DTPA violation was not ongoing).

### 3. Texas alleges no plausible risk of future harm

Finally, Texas has not alleged any plausible risk of future harm. The Petition includes the half-sentence allegation that Google "will continue to engage in the unlawful practices" and purports to describe a "continued pattern of behavior." Pet. ¶ 6, 25. But

those are quintessential "conclusory statements" that "do not suffice" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Rather, Texas' petition must rise or fall based on the presence or absence of "*factual content* that allows the court to draw the reasonable inference" that future harm is not merely possible, but plausible. *See id.* (emphasis added).

The Petition lacks any such factual content entirely. On the contrary, the factual allegations in the Petition state that not one month after the allegedly deceptive advertisements, Google remedied the (supposed) issue by providing phones to DJs when the campaign continued in states outside of Texas in 2020. *Id.* ¶ 25. If anything, the Petition conclusively alleges the *absence* of any plausible risk of a future violation—and in doing so undermines any public interest in relief that would "restrain" or "prevent" violations of the DTPA. *See* Tex. Bus. & Com. Code § 17.47(b).

Because Texas alleges no past harm, ongoing harm, or future harm to consumers, Texas has failed to adequately plead the necessary element that this suit is in the public interest.

## VIII.    Conclusion

For the foregoing reasons, dismissal with prejudice is appropriate.

18

Respectfully submitted,

By:   _/s/ Maria Wyckoff Boyce_

**Maria Wyckoff Boyce**
Texas SBN 22095050
maria.boyce@hoganlovells.com
**Jillian C. Beck**
Texas SBN 24082672
jillian.beck@hoganlovells.com
**HOGAN LOVELLS US LLP**
609 Main Street, Suite 4200
Houston, Texas 77002
T (713) 632-1400
F (713) 632-1401

**R. Paul Yetter**
State Bar No. 22154200
pyetter@yettercoleman.com
**Bryce L. Callahan**
State Bar No. 24055248
bcallahan@yettercoleman.com
**YETTER COLEMAN LLP**
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000

***Counsel for Defendant***
***Google LLC***

19

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that, on March 21, 2022, I conferred by phone with Chanele Reyes, Taylor Hubbard, Dan Zwart, and Rick Berlin, counsel for Plaintiff, regarding the bases for this motion.  Counsel for Plaintiff stated that Plaintiff opposes this motion.

<i>/s/ Maria Wyckoff Boyce</i><br>Maria Wyckoff Boyce

## **CERTIFICATE OF WORD COUNT**

I hereby certify that the word count for the foregoing motion is 4,874 words, exclusive of the case caption, table of contents, table of authorities, signature block, and certificates.

*/s/ Maria Wyckoff Boyce*
Maria Wyckoff Boyce

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system on March 22, 2022.

*/s/ Maria Wyckoff Boyce*
Maria Wyckoff Boyce