# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **Civil Action No. 4:22-cv-00636** |
| | § | |
| **GOOGLE LLC** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**GOOGLE'S REPLY IN SUPPORT OF ITS AMENDED MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

Page(s)

I.  Introduction .................................................................................................... 1

II.  Nature and stage of the proceedings ............................................................ 2

III.  Statement of the issues .................................................................................. 3

IV.  Standard of review ......................................................................................... 3

V.  Summary of the Argument ............................................................................. 3

VI.  Argument ........................................................................................................ 4

    A.  No violation of the DTPA exists ............................................................ 4

        1.  Google did not violate any provision of the DTPA cited
           by Texas or any other provisions .................................................. 5

           a.  Texas has failed to state a claim under Sections
               17.46(b)(2) and (3) ............................................................ 5

           b.  Texas has failed to state a claim under Sections
               17.46(b)(5) and (7) ............................................................ 6

           c.  Texas has failed to state a claim under Section 17.46(b)(24) ........... 7

           d.  Texas has failed to state a claim under Section 17.46(a) ................. 8

        2.  The DJs' statements do not violate the DTPA because they
           are too general ............................................................................. 9

        3.  The DJs did not provide personal endorsements ..................................... 10

    B.  Texas' suit does not serve the public interest ................................................. 16

        1.  Texas has alleged no past, ongoing, or future harm to consumers ........... 16

        2.  Texas makes no attempt to articulate how this suit
           serves the public interest ............................................................. 19

VII.  Conclusion .................................................................................................... 20

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                     **Page(s)**

*Armstrong v. Curves Int'l, Inc.*,
  No. 6:15-CV-294-RP, 2017 WL 894437 (W.D. Tex. Mar. 6, 2017)............................ 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 3, 8

*Avila v. State*,
  252 S.W.3d 632 (Tex. App.—Tyler 2008, no pet.) ...................................................... 17

*Awards Depot, LLC v. Trophy Depot, Inc.*,
  No. H-18-1838, 2018 WL 11352519 (S.D. Tex. Sept. 6, 2018)................................... 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 3

*David Jason W. & Pydia, Inc. v. State*,
  212 S.W.3d 513. (Tex. App.—Austin 2006, no pet.) ............................................ 17, 20

*Davis v. Byers Volvo*,
  4th Dist. Pike No. 11CA817, 2012-Ohio-882, 2012 WL 691757 (Ohio
  Ct. App. Feb. 24, 2012)................................................................................................ 13

*Doe v. Boys Clubs of Greater Dallas, Inc.*,
  907 S.W.2d 472 (Tex. 1995)........................................................................................... 7

*F.T.C. v. Garvey*,
  No. 00-9358 GAF, 2002 WL 31744639 (C.D. Cal. Nov. 25, 2002),
  *aff'd, Garvey*, 383 F.3d 891 ...................................................................................... 13

*FTC v. Garvey*,
  383 F.3d 891 (9th Cir. 2004) ................................................................................. 11, 12

*Helena Chem. Co. v. Wilkins*,
  47 S.W.3d 486 (Tex. 2001)......................................................................................... 6, 7

*Jasek v. Tex. Farm Bureau Underwriters*,
  No. 14-19-00759-CV, 2022 WL 364050 (Tex. App.—Houston [14th
  Dist.] Feb. 8, 2022, no pet.) ........................................................................................... 7

*Peacock v. AARP, Inc.*,
    181 F. Supp. 3d 430 (S.D. Tex. 2016) .......................................................... 14

*Shields v. State*,
    27 S.W.3d 267 (Tex. App.—Austin 2000, no pet.) ................................. 17, 20

*Spell v. Edwards*,
    962 F.3d 175 (5th Cir. 2020) ...................................................................... 18

*Spradling v. Williams*,
    566 S.W.2d 561 (Tex. 1978) ................................................................. 14, 15

*United States v. Realty Multi-List, Inc.*,
    629 F.2d 1351. (5th Cir. 1980) .................................................................... 19

**Statutes**

Tex. Bus. & Com. Code §17.46(a) .......................................................... 8, 9, 14

Tex. Bus. & Com. Code §17.46(b) ....................................................... 5, 6, 7, 8

Tex. Bus. & Com. Code §17.46(c)(1) .................................................... 8, 11, 14

Tex. Bus. & Com. Code §17.47(a) ........................................................... *passim*

**Other Authorities**

16 C.F.R. § 255.0(e) ....................................................................................... 13

16 C.F.R. §255.1 ........................................................................................... 14

Rule 12(b) .............................................................................................. 3, 8, 14

## I.  Introduction

It is undisputed that Google's advertisements for the Pixel 4 made no misrepresentations about the devices' features or capabilities.  Instead, Texas' entire case rests on allegations that the DTPA was violated when radio DJs—while reading Google copy during a pre-recorded conventional ad break—suggested first-person use of the phones.  Those allegations do not give rise to a claim under the DTPA, and Texas' case should be dismissed with prejudice.[1]

In its Petition, Texas frames this lawsuit as a misleading endorsement case, using a form of the term "endorsement" no fewer than 24 times in its pleading and quoting authoritative federal guidance regarding endorsements.  But Texas' endorsement theory fails as a matter of law because there is no endorsement here at all:  governing law makes clear that first-person statements on their own are not enough to turn conventional advertising into a personal endorsement.  Rather, the relevant standard asks whether consumers are likely to understand that such obvious advertisements reflect the speaker's, or the advertiser's, views.  The pre-recorded, Google-scripted, and overtly commercial language here clearly reflected Google's views, and not the DJs' own.

In its Opposition, Texas now virtually abandons its pled legal theory and seeks an unsupported expansion of the DTPA.  Under Texas' unprecedented view of the law, *every* scripted advertisement with first-person language would violate the DTPA if the language

---

[1] Although Texas litters its response with unsupported accusations of unethical behavior by Google's lawyers and their client, this Reply addresses the case itself and not those disappointing attacks.

1

in the script did not match the speaker's personal life.  That is not and cannot be the law.  Advertising scripts routinely contain first-person language—picture a paper towel commercial in which an actress mother claims that she uses the product to clean up after her actor children in her staged kitchen.  Those ads do not become unlawful based on the personal life of the actor playing the mother.

Texas has not stated a claim that Google violated any provision of the DTPA.  Nor has Texas demonstrated that this suit serves the public interest, which the plain language of the DTPA requires the State to do in every lawsuit it brings.  Rather than make any effort to satisfy that plain-text requirement, Texas asks this Court to write the public interest requirement out of the statute.  Indeed, Texas' own key admission that no consumers have been harmed—and its inability to allege any threat of ongoing or future harm from supposed misconduct that lasted barely a month two-and-a-half years ago—forecloses a determination that this suit is in the public interest.

This conclusion mandates both (1) a finding that a small group of hypothetical consumers who may have purchased a phone based upon these advertisements, and not Texas itself, are the real parties in interest and (2) dismissal of this lawsuit.  Accordingly, diversity jurisdiction exists, and this case should be dismissed with prejudice.

## II.    Nature and stage of the proceedings

Google filed an Amended Motion to Dismiss on June 6, 2022, Dkt. 33, to which Texas responded on June 16, 2022, Dkt. 36.[2]

_____

[2] A more fulsome description of the nature and stage of these proceedings can be found in Google's Amended Motion to Dismiss.  Dkt. 33 at 2.

### III.    Statement of the issues

This case should be dismissed with prejudice due to Texas' failure to satisfy the two required elements of a DTPA claim brought by the State: (1) the statements at issue violate the DTPA, and (2) the suit is in the public interest.

### IV.    Standard of review

Rule 12(b)(6) permits the defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted."   Allegations must contain "factual content"; "mere conclusions[] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  To survive a motion to dismiss, a complaint must contain enough facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3]

### V.    Summary of the Argument

The DTPA requires Texas to demonstrate both (1) a violation of the DTPA <u>and</u> (2) that the suit is in the public interest.  Tex. Bus. & Com. Code §17.47(a).  Texas' pleading does not allege either element and cannot be amended to escape these fatal flaws.

First, there is no DTPA violation here.  The DJs' first-person statements—which made no misrepresentations about the qualities or the characteristics of the phones themselves—do not violate any provision of the DTPA.  In addition, under the DTPA, general statements that convey no definite description of the actual qualities of the product itself are not actionable.  Furthermore, the statements were not endorsements, as case law

---

[3] A more fulsome description of the standard of review can be found in Google's Amended Motion to Dismiss.  Dkt. 33 at 3–4.

and regulatory guidance confirm.  As a result, the DJs' statements were not misleading and did not violate the DTPA as a matter of law.

Second, dismissal is also required for the independent reason that Texas has not pled any facts showing this suit is in the public interest.  The plain text of the DTPA allows the Texas Attorney General to bring lawsuits to protect consumers only if such suits are in the public interest.  Here, there is no allegation that any consumers were harmed, and Texas admits that the supposed misconduct was remediated and permanently stopped two-and-a-half years ago.  Because Texas makes no statements in its Petition plausibly alleging that this suit is in the public interest, dismissal with prejudice is warranted.

## VI.   Argument

### A.  No violation of the DTPA exists

Texas alleges that Google marketed the Pixel 4 in radio advertisements in which radio hosts described the phones and their features and also allegedly stated that they had used the phones personally.  Texas' theory is that those alleged statements of use—rather than any statements about the phones themselves—were misleading "personal endorsements" of the phones.  *See, e.g.*, Pet. at 1 and ¶¶ 19, 20, 27, 28, 29, 34.  That pled theory, which Texas has virtually abandoned in its Opposition brief, fails because the statements in the ads were not personal endorsements.  But with or without its endorsement theory, Texas has not and cannot plead that Google violated any provision of the DTPA.

Recognizing this insurmountable challenge, Texas asks this Court to create new law.  Texas takes the unsupported position that ***any*** first-person sponsor statement in an advertisement—endorsement or no—is subject to review by the Attorney General for

whether it comports with the personal life of the messenger.  That is not, and never has been, the law.  If it were, virtually all familiar, everyday advertising would violate the DTPA.  Imagine a familiar example of a commercial depicting a "mother" (actually an actor) in her "kitchen" (a set) cleaning up after "her" "children" (also actors) using brand-name paper towels.  The actor may say, "*I* use these paper towels to clean up after *my* kids."  According to Texas' new interpretation of the DTPA, the paper-towel manufacturer could be liable if the actor herself does not actually use that brand of paper towel in her home, is not standing in her own kitchen, is not the mother of the children seen in the commercial, or does not have any children at all.  Texas points to no case expanding the DTPA's reach that far because none exists.

### 1. Google did not violate any provision of the DTPA cited by Texas or any other provisions

#### a. Texas has failed to state a claim under Sections 17.46(b)(2) and (3)

Texas does not dispute that courts apply Sections (b)(2) and (3) to misrepresentations about products themselves, thereby making these sections irrelevant to the facts of this case.  Indeed, Texas' reliance on *Pope v. Rollins Protective Services Co.* proves this point.

In *Pope v. Rollins*, defendants violated Section 17.46(b)(3) by creating confusion about the ***functionality*** of a home alarm system—the homeowner was led to believe that the alarm system would dial a "central station" in the event the alarm was triggered, and that station would contact the police.  703 F.2d 197, 199 (5th Cir. 1983).  That representation was false.  In reality, the "central station" was an answering service with no

5

special access to the police, and actual police response times were significantly higher than the homeowner was told. *Id.* Those misstatements about ***the product's performance*** were ultimately catastrophic: the homeowner was subsequently the victim of a home invasion. *Id.* at 200.

Far from establishing that the bar for DTPA confusion is "low," Dkt. 36 at 9, the alarm company in *Pope v. Rollins* violated the DTPA because it misrepresented and caused harmful confusion about the essential functioning of its security product, namely, its ability to protect the owner from a home invasion. *Id.* at 200–01. Here, by contrast, Texas does not dispute that Google's phones functioned as advertised. Texas' claims under Sections 17.46(b)(2) and (3) should be dismissed with prejudice.

### b. Texas has failed to state a claim under Sections 17.46(b)(5) and (7)

Texas concedes that, to violate Sections (b)(5) and (7), a defendant must make a misrepresentation about the characteristics of a product itself. Dkt. 36 at 11. And, again, Texas' only cited case confirms this requirement. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 503 (Tex. 2001) (concluding that evidence supported finding that seller defendant violated sections 17.46(b)(5) and (7) when it made "specific representations about [its] seed's characteristics and specific representations about how the [plaintiffs'] crop in particular would perform.").

Nothing in Texas' governing Petition supports Texas' argument in its Opposition that Google falsely represented "the characteristics and quality of the Pixel 4 smartphone and its features, particularly its camera." Dkt. 36 at 11. Texas describes the ads' statements

about the phones' photography capabilities, *id.*, but, tellingly, stops short of the required claim that the Pixel 4 is not capable of taking such photos. Accordingly, Texas cannot meet the elements of claims brought under Sections 17.46(b)(5) and (7), and those claims should be dismissed with prejudice.

### c.   Texas has failed to state a claim under Section 17.46(b)(24)

Consistent with the DTPA's purpose to protect consumers, Section 17.46(b)(24) targets withheld information about the products themselves. *See* Dkt. 33 at 12; *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 479 (Tex. 1995) ("Furthermore, the information withheld ***must concern goods or services.***") (emphasis in original). It is undisputed that Google never withheld information regarding the characteristics of the phones themselves. Texas had 13 pages in its Petition to identify even one such misstatement or nondisclosure, but Texas could not do so. For this reason alone, Texas has not stated a claim pursuant to Section 17.46(b)(24).

Moreover, to make a claim under Section 17.46(b)(24), Texas must show more than "[m]ere nondisclosure." *See Jasek v. Tex. Farm Bureau Underwriters*, No. 14-19-00759-CV, 2022 WL 364050, at *3 (Tex. App.—Houston [14th Dist.] Feb. 8, 2022, no pet.). Texas has not pled the necessary elements that "there was an intent to induce the consumer to enter into the transaction through the failure to disclose," and "the consumer would not have entered into the transaction had the information been disclosed." *Id.*, at *3 (citing Tex. Bus. & Com. Code §17.46(b)(24)) (emphasis added). Texas hypothesizes that Google "would have been aware that disclosing that the Personalities actually never possessed the phone" would hurt its ad campaign, but points to no factual allegations that support this

7

claim.  *See* Dkt. 36 at 12.

Texas' hypothetical and conclusory allegations that Google "manipulat[ed] the marketplace" and that "[c]ustomers, who might otherwise make a purchase from one of Google's competitors, are induced through false representations to purchase Google products, instead" cannot survive a Rule 12(b) challenge.  *See* Dkt. 36 at 13 (citing Pet. at 10).  Texas does not allege "factual content" from which the Court can reasonably infer that any transactions actually occurred, *see Iqbal*, 556 U.S. at 663, as the DTPA requires.  *See* Tex. Bus. & Com. Code §17.46(b)(24) (referencing representations "at the time of the transaction").  Accordingly, Texas' Section 17.46(b)(24) claim should be dismissed with prejudice.

### d.  Texas has failed to state a claim under Section 17.46(a)

The insufficiencies with Texas' Section 17.46(b) claims apply equally to its claim under section 17.46(a).  Indeed, the statute explicitly directs that courts interpreting subsection (a) "***will be*** guided by" the provisions of subsection (b).  Tex. Bus. & Com. Code §17.46(c)(1) (emphasis added).  As described above, Texas cannot state a claim under Section 17.46(b).  This fact alone forecloses Texas' claim under Section 17.46(a).

*Pennington v. Singleton* does not expand Texas' authority in the way it imagines. Even assuming that *Pennington's* interpretation of the version of the DTPA "in effect at that time" governs here, 606 S.W.2d 682, 685 n.1 (Tex. 1980), the case concerned the closing of technical "loopholes" that would permit deceptive conduct, *id.* at 688.  But far from trying to close any loophole here, Texas seeks something much more ambitious:  its novel interpretation of section 17.46(a) would subject potentially *all* conventional

advertising using first-person statements to DTPA liability based on facts about the personal life of the spokesperson in the ad.

That theory is unprecedented, and it is wrong.  Google did not violate Section 17.46(a)'s general prohibition because there was no "[f]alse, misleading, or deceptive" conduct here at all.  *See* Tex. Bus. & Com. Code §17.46(a).  Just like the actress playing a fictional mother personally using paper towels in a paper towel commercial, the DJs' statements suggesting they personally used the phones were obvious advertisements that deceived no one.[4]  Despite repeated opportunities to do so, Texas does not allege that any of the DJs made a single misrepresentation about the phones themselves.  Section 17.46(a) does not allow Texas to escape the requirement to plead such a statement.  Texas has not done so, and its Section 17.46(a) claim should be dismissed with prejudice.

### 2. The DJs' statements do not violate the DTPA because they are too general

Texas relies on the overused phrase "red herring" to try to dodge the fact that the DJs' statements are simply too general to violate the DTPA.  But Texas' own cases demonstrate that the DJs' statements—which conveyed no implications at all about the phones themselves—do not violate the DTPA.  This very relevant argument defeats Texas' DTPA claim as a matter of law once again.

In *Pennington v. Singleton*, the seller violated the DTPA when he falsely represented to an actual consumer that a used boat and motor, whose gear housing was

---

[4] This conclusion is confirmed by federal case law and Federal Trade Commission guidance, as discussed below in Section VI.A.3.

cracked and inadequately repaired, "were in excellent condition," "perfect condition," and were "just like new."  606 S.W.2d at 685.  These statements violated the DTPA precisely because they conveyed false information *about the good* that the buyer was purchasing. *See id.* at 687 ("The DTPA prohibits false general *descriptions about the good*, as well as misrepresentations pertaining to more specific information.") (emphasis added).

*Autohaus, Inc. v. Aguilar* is also instructive.  In *Autohaus*, the court found that a salesman's statements that a car "(1) was the best engineered car in the world; (2) probably would not have mechanical difficulties; and (3) probably would only need servicing for oil changes" were "just *too general* to be an actionable misrepresentation" because they did not "convey any definite implications" about the car.  794 S.W.2d 459, 464 (Tex. App.—Dallas 1990), writ denied, 800 S.W.2d 853 (Tex. 1991) (emphasis added).  The lack of any definite implication prevented the consumer buyer of the car from being deceived about any actual characteristics or qualities of the product he was purchasing. *Id.* at 464–465.

The undisputed facts of this case are even more compelling than the facts of *Autohaus*.  Texas does not allege that the DJs made any false descriptions of, or conveyed any untrue implications at all about, the phones themselves.  Therefore, there cannot be a DTPA violation as a matter of law.

### 3. The DJs did not provide personal endorsements

As explained above, Texas has failed to state a claim under any of the provisions of the DTPA upon which it relies.  Furthermore, Texas has effectively abandoned the misleading "endorsement" theory set forth in its Petition.  Accordingly, the Court can stop its analysis here and dismiss this suit with prejudice.

10

Ample additional support for dismissal is found in federal law and Federal Trade Commission ("FTC") guidance, which the DTPA looks to for authority. *See* Tex. Bus. & Com. Code §17.46(c)(1).   The seminal case about endorsements holds that an advertisement is an endorsement only if "consumers are likely to believe" that the ad "reflects the opinions, beliefs, findings, or experience of a party other than the sponsoring advertiser." *FTC v. Garvey*, 383 F.3d 891, 903 (9th Cir. 2004).   On-point authority confirms that the ads at issue do not satisfy this standard.  Instead, the DJs' statements were obvious advertisements that consumers understood to reflect Google's views. Accordingly, there were no deceptive statements here and, thus, no DTPA violation.

First, FTC guidance provides the precise analogue to this case.  It describes a television show "where the host goes to a different set, holds up a cup of coffee, says 'Wake up with ABC Coffee. It's how I start my day!' and takes a sip . . . ." The FTC's Endorsement Guides: What People Are Asking ("FTC Endorsement FAQ").[5]   The guidance is unequivocal that, even though the ad copy is written in the first-person, this is "obviously an advertisement" by a spokesperson, and not a personal endorsement.  *Id.* Accordingly, the ad does not become deceptive based on the personal coffee-drinking habits of the host, who (like the DJs here) is simply reading the scripted and paid-for ad copy and conveying the views of the advertiser.[6]  The recorded "scripted" (Pet. ¶ 15) radio

---

[5] Available at http://www.ftc.gov/business-guidance/resources/ftcs-endorsement-guides-what-people-are-asking (last updated August 27, 2020).

[6] Under Texas' theory that first-person statements by a spokesperson are automatically misleading, the coffee-drinking TV host would violate the DTPA if he did not personally drink ABC coffee every morning.  As the FTC has recognized, that is not the law.

ads—another case of a host of a show reading scripted and recorded ad copy—resemble the "ABC Coffee" example in every relevant way.

*FTC v. Garvey* confirms this regulatory guidance. *Garvey* squarely held that Mr. Garvey's first-person statements about the Enforma product—for example, that he "truly believe[s that it] is the greatest weight loss program in history," 383 F.2d at 904[7]—did not convert the infomercial into an endorsement. It is irrelevant that the Ninth Circuit decided *Garvey* on summary judgment, because Texas takes the position, contrary to FTC guidance, that ***any*** celebrity statement involving first-person language is an endorsement. Dkt. 36 at 17. If that were correct, then Mr. Garvey's first-person statements would have precluded summary judgment, and the case would have come out the other way. The court of appeals' affirmance in the face of first-person statements shows that Texas' stated standard is not the law.

The court of appeals also observed that Mr. Garvey made statements ***separate from*** the infomercial that may have been a personal endorsement. But those statements—which explicitly began with "I've ***endorsed*** products through the years," *id.* at 904 (emphasis added)—are plainly distinct from the infomercial context. As to those statements only, the court of appeals affirmed the district court on the alternative basis of Mr. Garvey's experience with the product.

---

[7] Texas contests that Mr. Garvey provided a first-person testimonial, but the text of the opinion leaves little doubt. *See Garvey*, 383 F.2d at 904 ("the FTC pointed to statements made by Garvey in the infomercials that the Enforma System 'works,' that he 'truly believe[s that it] is the greatest weight loss program in history,' that he is 'convinced,' that he 'love[s] this,' and that 'this is the most amazing system that [he has] ever seen.'").

The radio DJs' lack of expertise is another reason they are not endorsers. FTC guidance recognizes that distinction, noting that a golf pro promoting a golf ball is likely an endorser, but a comedian promoting a television likely is not. *See* 16 C.F.R. § 255.0(e) Example 5, Example 7. And the case law is in accord, consistently holding that expertise is a relevant consideration. *See F.T.C. v. Garvey*, No. 00-9358 GAF, 2002 WL 31744639, at *6 (C.D. Cal. Nov. 25, 2002), *aff'd*, *Garvey*, 383 F.3d 891 (finding that Garvey's first-person statements were not personal endorsements based in part on his lack of perceived expertise); *Davis v. Byers Volvo*, 4th Dist. Pike No. 11CA817, 2012-Ohio-882, 2012 WL 691757, at *16 (Ohio Ct. App. Feb. 24, 2012) (local celebrity's appearance in car dealership ad was not "endorsement" where court saw "no logical reason . . . why a reasonable consumer might believe that a former college football player and current television football analyst may possess any special knowledge about motor vehicles").[8] Even Texas would have to concede that a radio DJ does not have special expertise about the inner workings of a cell phone.

Texas tries to avoid the import of this settled law by denying that federal precedent is relevant. As an initial matter, this position contradicts Texas' own Petition, which

---

[8] Texas' attempt to distinguish *Davis v. Byers Volvo* fails. Texas mischaracterizes the issue in *Davis* by claiming it involves whether "the celebrity's ***mere appearance*** in the commercial constituted an endorsement," *see* Dkt. 36 at 17 n. 3 (emphasis added). But the celebrity football player did make statements about the car dealership, such as that the dealership "can offer you the best selection" and the "best price." *See Davis*, 2012 WL 691757, at *10. Moreover, the fact that the celebrity's statements did not relay his opinions or personal use of the dealership's services does not undercut the *Davis* court's operative finding that the celebrity was not an "endorser" for the additional reason that he lacked any specialized expertise about cars. *Id.* at *16.

explicitly invokes federal law and which quotes (without attribution) and plainly relies upon the FTC Endorsement Guides. *See* Pet. at 9 n. 5; *compare* Pet. ¶ 28(a) and (b) with 16 C.F.R. §255.1(a), Pet. ¶ 28(c) and (d) with 16 C.F.R. §255.1(b), and Pet. ¶ 28(e) with 16 C.F.R. §255.1(c). Texas cannot abandon its Petition to try to escape dismissal. *See Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 434 (S.D. Tex. 2016) ("A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion.").

Texas' attempt to distance itself from federal law is also incorrect as a matter of law. The DTPA states that, in construing Section 17.46(a), "courts to the extent possible ***will*** be guided by Subsection (b) of this section and the interpretations given by the [FTC] and federal courts to Section 5(a)(1) of the [FTC] Act." Tex. Bus. & Com. Code §17.46(c)(1) (emphasis added). The DTPA's use of the word "will"—as opposed to something like "may" or "should"—reflects a statutory command that Texas acknowledged in its Petition and cannot now run from. *See Awards Depot, LLC v. Trophy Depot, Inc.*, No. H-18-1838, 2018 WL 11352519, at *2 (S.D. Tex. Sept. 6, 2018) ("'[W]ill be' is mandatory language"); *see also Armstrong v. Curves Int'l, Inc.*, No. 6:15-CV-294-RP, 2017 WL 894437, at *4 (W.D. Tex. Mar. 6, 2017) ("Notably, these provisions include mandatory language, such as 'must' and 'will,' not discretionary language.").

Texas erroneously cites to *Spradling v. Williams*, 566 S.W.2d 561 (Tex. 1978), to support its reading of Section 17.46(c)(1) that interpretation of federal law is "only required where appropriate," and thus not determinative. Dkt. 36 at 18. But *Spradling* simply restates the text of the statute. *See* 566 S.W. 2d at 562–63. Then, the *Spradling* court proceeded to look to federal law for guidance, as the DTPA instructs. *Id.* at 563. Applying

*Spradling* here, consultation of federal law is plainly "appropriate," where the Petition attempts to allege an endorsement theory and expressly invokes federal law. *Spradling* supports Google's, not Texas', straightforward interpretation of the DTPA.[9]

The federal and state case law on endorsements are not just legal requirements; they make practical sense. Endorsements by their nature rely on apparent neutrality or expertise of the speaker in a way that conventional advertisements do not. For example, FTC guidance provides that a blogger who posts a glowing review about a luxury resort must disclose if the resort paid her to write the review or let her stay for free. In the absence of the disclosure, a travel blogger is the sort of marketer who consumers could plausibly believe is independent and whose own personal experience gives her opinion added credibility or weight. FTC Endorsement FAQ. The same is obviously not so for a TV show host (as described in the FTC guidance) or a radio show DJ.

Unlike endorsements, conventional advertisements are well known to consumers to convey—whether through spokespersons, actors, or written copy—the views of the sponsoring company, rather than the personal views of the speaker. Texas alleges nothing to suggest this case is any different. The ads here were "recorded," "scripted" ads, Pet. ¶ 21, that were read by the host of the show during designated commercial breaks

---

[9] *Spradling* represents exactly the type of appropriate DTPA suit that Texas has failed to bring here: a consumer plaintiff alleged that the seller defendant made specific misrepresentations about the quality, characteristics, and price of the defective boat that the plaintiff was induced to purchase. 566 S.W. 2d at 561–62. Texas has not alleged that Google made a single false statement about the quality or characteristics of the Pixel 4, nor has Texas alleged that any consumers were actually induced to purchase a Pixel 4 phone on the basis of those statements, or at all.

distinguished from the standard programming of DJ chatter and music.  FTC guidance addresses this scenario almost exactly.  Like the television host discussing ABC Coffee, the radio host discussing a mobile phone does not provide an endorsement, and Texas' DTPA claim fails on that basis.

**B.  Texas' suit does not serve the public interest**

Recognizing both the absence of a DTPA violation and the lack of public interest here, Texas tries to escape dismissal by merging the two distinct requirements into one. The essence of Texas' argument is that any case, regardless of merit, that the Attorney General chooses to bring is automatically in the public interest.  *See* Dkt. 36 at 20.  But the DTPA confirms that this is not the law and that the Attorney General does not have the unfettered authority he seeks to declare.  Instead, the DTPA requires that a suit brought by Texas must <u>both</u> (1) allege a violation of the DTPA <u>and</u> (2) be in the public interest.  Tex. Bus. & Com. Code §17.47(a).

Texas contends that it is not required to plead consumer harm to establish that its suit is in the public interest.  *See* Dkt. 36 at 20.  In so doing, Texas ignores the case law and statutory language showing that public interest is typically demonstrated through past, ongoing, or a risk of future harm to consumers.  *See* Dkt. 33 at 16–17.  And Texas presents no alternative basis for how this suit serves the public interest.  Texas instead effectively asks the Court to disregard the public interest requirement altogether and simply rubber stamp Texas' conclusory and unsupportable assertion of a public interest.

**1. Texas has alleged no past, ongoing, or future harm to consumers**

Typically, DTPA suits brought by the State are in the public interest because they

are protecting the public from past, ongoing, or the risk of future harm.  *See* Dkt. 33 at 16–17.  But Texas acknowledges that no such harm exists here.[10]

The DTPA clearly requires Texas to plead facts sufficient to show that its suit is in the public interest.  Tex. Bus. & Com. Code §17.47(a).  And Texas' own cases demonstrate what is necessary to carry that burden.  *See Shields v. State*, 27 S.W.3d 267, 273 (Tex. App.—Austin 2000, no pet.) (non-DTPA case involving Texas Security Act, where harm to consumers included "money . . . obtained from each investor by fraudulent practices"); *David Jason W. & Pydia, Inc. v. State*, 212 S.W.3d 513, 516–19.  (Tex. App.—Austin 2006, no pet.) (suit was in public interest because ostensible debt-forgiveness website— which the court held to same standard as credit services organization under the Texas Finance Code—caused website visitors to wire money to a bank account owned by the defendant, despite the website's claim that the money would instead secure a loan from a bank that "would not require repayment"); *Avila v. State*, 252 S.W.3d 632, 646 (Tex. App.—Tyler 2008, no pet.) (the State specifically identified "2,181 consumers who each paid at least $150.00 to the [defendants]" for unlicensed legal services).

Here, Texas makes no allegation of any harm to a single consumer—past, present, or future.  Texas does not even allege a single purchase by, or claim harm to, a single consumer.  *See* Dkt. 34 (Texas' Am. Mot. to Remand) at 15 ("[T]he Petition does not detail

---

[10] For the same reasons that Texas has not, and cannot, allege that this suit is in the public interest, Texas is also not the real party in interest here and this case was properly removed. Rather than pursuing the interests of the public, Texas is pursuing the interests of a small group of hypothetical consumers who may have purchased phones based on the advertisements.  Those consumers, not Texas, are the real parties in interest, and this suit is properly in federal court on the basis of diversity jurisdiction.  *See* Dkt. 35.

any individual consumer damages"). And Texas' own Petition confirms that there is no ongoing harm or risk of future harm here; rather, Texas alleges that the purported misconduct lasted just 36 days, that it ended more than two-and-a-half years ago in December 2019, and that, when similar radio ads aired the next month, the conduct Texas complains of did not repeat. Pet. ¶ 25. [11]

Texas denies the import of the curative steps it alleges in its Petition by quoting *some* of the DTPA's provision on mootness and voluntary cessation. *See* Tex. Bus. & Com. Code §17.47(a). But the full text of the provision supports Google, not Texas. Section 17.47(a) of the DTPA requires the state to "contact" a potential DTPA defendant at least seven days before bringing suit. The provision then says that "[c]essation of unlawful conduct *after such prior contact* shall not render such court action moot" nor remove the state's right to injunctive relief. *Id.* (emphasis added). In other words, the statute ignores remedial conduct *only if* it is undertaken opportunistically—*i.e.*, after the defendant is made aware that he is under scrutiny.

This provision of the DTPA does not say that *any* voluntary cessation is to be ignored for purposes of determining the risk of ongoing or future harm—indeed, it appears to state just the opposite. And this interpretation makes sense, because the voluntary cessation doctrine typically concerns conduct that is ceased opportunistically in response to an initiated lawsuit or investigation. *See Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir.

---

[11] Texas again misstates its own Petition, contending that Google "refused to provide phones" for its second ad campaign and "demanded the Personalities record the ads as scripted." Dkt. 36 at 8. Texas actually states in its own Petition that Google later sent phones to the radio stations as requested. *See* Pet. ¶ 25.

2020) ("[A] defendant cannot automatically moot a case simply by ending its [allegedly] unlawful conduct **once sued** . . . .") (emphasis added) (internal quotation marks omitted); *see also United States v. Realty Multi-List, Inc*., 629 F.2d 1351, 1387–88.  (5th Cir. 1980) ("[T]he voluntary cessation of allegedly illegal practices **in an attempt to avoid suit** does not moot the controversy they present.") (emphasis added). There is no strategic post-suit conduct here intended to affect Texas' public interest analysis because the conduct Texas complains of stopped more than two-and-a-half years ago, well before Texas filed its Petition.  Even if Google's conduct were improper—which it was not—then certainly Texas would want to encourage Google to cease that conduct of its own accord, rather than punish Google for doing so.

### 2. Texas makes no attempt to articulate how this suit serves the public interest

In the absence of allegations of consumer harm, Texas has not articulated any alternative basis for how its suit serves the public interest and can survive dismissal.  On the contrary, Texas proclaims a brand-new *res ipsa loquitor* standard never before recognized by the Legislature or any court that "[i]n government enforcement actions, the alleged violation of the law itself satisfies the 'public interest' element."  Dkt. 36 at 20. But this collapses the inquiry: the required elements of a DTPA claim brought by Texas are (1) that the statements at issue violated the DTPA <u>and</u> (2) that the suit is in the public interest.  Tex. Bus. & Com. Code §17.47(a).   The two separate elements do not become one just because Texas says so.

Both cases on which Texas relies to support its newly created standard implicated the public interest because consumers faced harm.  And neither case holds that allegations of public interest are not required.  *See Shields*, 27 S.W.3d at 270 (a non-DTPA case in which harm included Defendant's misrepresentations about the level of risk involved in investments); *West*, 212 S.W.3d at 521 (in which the lower court found that the DTPA was violated "***and*** that 'this action is in the public interest.'" (emphasis added)).

Texas' sole basis for claiming that this lawsuit is in the public interest is the vague assertion that Texas is protecting consumers and the marketplace.  *See* Dkt. 36 at 14, 20. But Texas is not protecting either because Texas acknowledges that no consumers have been or will be harmed by the DJs' statements.  Texas remains obligated to plead specific facts showing why this suit is in the public interest, which it has not done.

Because Texas cannot show any past, future, or ongoing harm to consumers—and has not otherwise articulated how its suit serves the public interest—Texas has failed to state a valid claim under the DTPA, and this lawsuit should be dismissed with prejudice.

## VII.   Conclusion

For the foregoing reasons, Google's Motion to Dismiss should be granted, and all of Texas' claims should be dismissed with prejudice.

Respectfully submitted,

By:   */s/ Maria Wyckoff Boyce*
**Maria Wyckoff Boyce**
Texas SBN 22095050
maria.boyce@hoganlovells.com
**Jillian C. Beck**
Texas SBN 24082672

20

jillian.beck@hoganlovells.com
**Charlotte H. Nicholas**
Texas SBN 24127872
charlotte.nicholas@hoganlovells.com
**HOGAN LOVELLS US LLP**
609 Main Street, Suite 4200
Houston, Texas 77002
T (713) 632-1400
F (713) 632-1401

**R. Paul Yetter**
State Bar No. 22154200
pyetter@yettercoleman.com
**Bryce L. Callahan**
State Bar No. 24055248
bcallahan@yettercoleman.com
**YETTER COLEMAN LLP**
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000

***Counsel for Defendant***
***Google LLC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served on all counsel of

record via the Court's CM/ECF system on June 21, 2022.

*/s/ Maria Wyckoff Boyce*
Maria Wyckoff Boyce