**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-00636 |
| | § | |
| | § | |
| GOOGLE LLC, | § | |
| Defendant. | § | |

**THE STATE OF TEXAS' REPLY TO**
**DEFENDANT'S MOTION TO REMAND RESPONSE**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ............................................................................ iii

I.    ISSUE STATEMENT AND STANDARD OF REVIEW ......................................... 2

II.   NATURE AND STAGE OF PROCEEDINGS ........................................................ 2

III.  SUMMARY OF THE ARGUMENT ....................................................................... 3

IV.   ARGUMENT ....................................................................................................... 3

    A.  The State is the only party with the substantive right to bring an enforcement action under DTPA section 17.47 and is the real party in interest ............................................................................................................... 3

        1.  The Texas Legislature granted the Attorney General broad authority to protect Texans from false, deceptive, and misleading conduct .............. 4

        2.  Whether individuals have a limited ability to bring private claims under the DTPA is irrelevant to the Court's determination of the State's Motion ..................................................................................................... 6

        3.  The great weight of authority confirms that this case should be remanded ................................................................................................. 8

            a.  Google ignores longstanding black-letter law that the State is not a citizen ................................................................................................. 8

            b.  Every court that has examined citizenship when the State brought a DTPA enforcement action concluded the case should be remanded  8

            c.  The courts' decisions in *VSO* and *Eye Level Holdings* are confirmed by a plethora of cases throughout the country ................................. 10

            d.  The few cases Google cites have limited relevance or precedential value .................................................................................................. 12

    B.  The State is authorized to seek a variety of relief under Section 17.47 ........ 16

V.    CONCLUSION .................................................................................................. 17

CERTIFICATE OF SERVICE ......................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

*Allen v. R&H Oil & Gas Co.,*
    63 F.3d 1326 (5th Cir. 1995)....................................................................................... 2

*Avila v. State,*
    252 S.W.3d 632 (Tex. App.—Tyler 2008, no pet.) ................................................. 7

*Com. ex rel. Stumbo v. Marathon Petroleum Co., LLC,*
    2077 WL 2900461 (E.D. Ky. Oct. 3, 2007) ......................................................... 10

*Commonwealth of Kentucky ex rel. Brown v. Pocket Kings, Ltd.,*
    No. CIV. 14-27-GFVT, 2015 WL 1480311 (E.D.  KY. Mar. 31, 2015) ............. 14, 15

*David Jason West & Pydia, Inc. v. State,*
    212 S.W.3d 513 (Tex. App.—Austin 2006, no pet.) ................................................ 7

*Dep't of Banking & Sec. v. TitleMax of Delaware, Inc.,*
    No. 1:17-CV-02112, 2020 WL 127995 (M.D. Pa. Jan. 10, 2020) ...................... 11, 14

*Farrell Const. Co. v. Jefferson Par., La.,*
    896 F.2d 136 (5th Cir. 1990) ................................................................................... 4

*GMAC Mortg. Ohio v. GMAC Mortg., LLC,*
    760 F. Supp. 2d 741 (N.D. Ohio 2011) .............................................................. 13, 14

*Grace Ranch L.L.C. v. BP America Production Company,*
    989 F.3d 301 (5th Cir. 2021)............................................................................... 12, 13

*Hood v. AstraZeneca Pharm., LP,*
    744 F. Supp.2d 590 (N.D. Miss. 2010) ................................................................ 7, 8

*Hood ex. rel. Missisppi v. Bristol-Myers Squibb Co. ,*
    No. 1:12-CV-00179-GHD, 2013 WL 3280267 (N.D. Miss. Jun. 27, 2013) .........9, 15

*Hood ex. rel. Missisppi v. Bristol-Myers Squibb Co. ,*
    No. 1:12-CV-00179-GHD (N.D. Miss. Jul. 24, 2014) ...........................................15

*Hood ex. rel. Mississippi v. Microsoft Corp.,*
   428 F.Supp.2d 537 (S.D. Miss. 2006) ............................................................4, 5, 10

*Illinois v. SDS West Corp.,*
   640 F. Supp. 2d 1047 (2009) ...................................................................................11

*Missouri, K. & T. Ry. Co. of Kansas v. Hickman,*
   183 U.S. 53 (1901)............................................................................................ 13, 15

*Manguno v. Prudential Prop. & Cas. Ins. Co.,*
   276 F.3d 720 (5th Cir. 2002) ................................................................................... 2

*Moor v. Alameda Cty.,*
   411 U.S. 693 (1973) ........................................................................................ 1, 2, 17

*Ohio ex. rel. Dann v. Citibank (South Dakota), N.A.,*
   2008 WL 1990363 (S.D. Ohio May 1, 2008)................................................... 11, 14

*Postal Telegraph Cable Co. v. Alabama,*
   155 U.S. 482 (1894) ............................................................................................ 7, 8

*Riverside Nat'l Bank v. Lewis,*
   603 S.W.2d 169 (Tex. 1980) .................................................................................... 6

*State of Maine v. First Jersey Securities Inc.,*
   655 F. Supp. 1370 (D. Me. 1987) ............................................................................ 5

*State of Missouri ex rel. Webster v. Freedom Financial Corp.,*
   727 F. Supp. 1313 (W.D. Mo. 1989) ...................................................................5, 10

*State of New York v. General Motors Corp.,*
   547 F. Supp. 703 (S.D.N.Y. 1982) .......................................................................5, 10

*State of Texas v. Eye Level Holdings, LLC et al.,*
   Case No. A-11-CA-178-SS (W.D. Tex. Mar. 11, 2011)..................................... 3, 6, 8

*State of Texas v. Veterans Support Org.,*
   166 F. Supp. 3d 816 (W.D. Tex. 2015) ..........................................................3, 6, 8, 9

*Texas v. Merck & Co.,*
   385 F. Supp. 2d 604 (W.D. Tex. 2005) ............................................................... 7, 8

iv

**Statutes**

Tex. Bus. & Com. Code § 17.41 ............................................................... 2

Tex. Bus. & Com. Code § 17.46 ........................................................... *passim*

Tex. Bus. & Com. Code § 17.50 ............................................................ 6, 9

Tex. Bus. & Com. Code § 17.47 ........................................................... *passim*

Tex. Civ. Prac. & Rem. Code Chapter 65 .................................................. 9

**Rules**

Tex. R. Civ. P. 683 ................................................................................. 9

Remand is proper because this is a straight-forward DTPA enforcement by the State pursuant to its legislatively granted authority to protect the public interest and ensure a just and fair marketplace. Google's fundamental misunderstanding of the DTPA results in the erroneous conflation of a private consumer right of action and the State's statutory right to bring an action to regulate specific conduct. By this action, the State seeks to enforce its sovereign interest to protect *all* consumers from Google's false, deceptive, and misleading advertisements. The State also seeks to protect the marketplace, including those of Google's competitors who do comply with the law and therefore are put at a disadvantage by Google's illegal conduct. And the State seeks relief to vindicate these sovereign interests, namely civil penalties and broad injunctive relief.

Google's Response to the State's Motion for Remand unsuccessfully attempts to confuse this straightforward determination the Court must make. In an attempt to manufacture diversity jurisdiction, Google latches on to passing references to consumer redress in the State's Original Petition and argues that the State must be bringing the action solely on behalf of a small subset of consumers. But this is mere misdirection—the black-letter law is that the State is not a citizen for purposes of diversity jurisdiction. *Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973). As such, the Court should remand this DTPA enforcement action back to the state court in which it belongs, as well as award the State with the costs associated with defending this unnecessary removal action.

## I.    ISSUE STATEMENT AND STANDARD OF REVIEW

Is remand appropriate where the State, as the real party in interest, is not a citizen for purposes of diversity jurisdiction? A federal district court has jurisdiction over all civil actions in which the amount in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1). If at any time prior to the final judgment the court determines it lacks subject matter jurisdiction, the case must be remanded to state court. 28 U.S.C. § 1447(c). Remand is strongly favored. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

## II.    NATURE AND STAGE OF PROCEEDINGS

The State of Texas filed its Amended Motion to Remand on June 6, 2022. Dkt. 34. Google filed its response on June 16, 2022. Dkt. 35.

## III.    SUMMARY OF THE ARGUMENT

The Court should remand this case for lack of diversity because when "a State is a party to a lawsuit, or is the real party in interest, diversity of citizenship does not exist." *Moor*, 411 U.S. at 717.

The Texas Legislature has granted the State exclusive authority to bring an enforcement action under DTPA Sections 17.46(a) and 17.47. Tex. Bus. & Com. Code § 17.41 *et seq.* This authority mandates the protection of the public interest, including the defense of a fair and just marketplace that does not allow for deceptive advertising, and the DTPA entitles the State to obtain civil penalties—monetary relief that only the State has

2

the right to seek and that inures solely to the State's benefit—and broad injunctive relief to prevent future violations of the statue.

Federal courts in Texas that have considered diversity in the context of the DTPA confirmed that when the State prosecutes such an action, no diversity exists, and the cases have been remanded. *See Texas v. Veterans Support Org.*, 166 F. Supp. 3d 816 (W.D. Tex. 2015); *Texas v. Eye Level Holdings, LLC et al.*, Case No. A-11-CA-178-SS (W.D. Tex. Mar. 11, 2011). Google's reliance on a few isolated cases from other jurisdictions interpreting other laws is misplaced and against the great weight of authority.

## IV.   ARGUMENT

### A. The State is the only party with the substantive right to bring an enforcement action under DTPA Section 17.47 and is the real party in interest.

#### 1. The Texas Legislature granted the Attorney General broad authority to protect Texans from false, deceptive, and misleading conduct.

The DTPA is a broad statute that allows for different types of civil suits, one of which is a state enforcement action. The State, specifically the Consumer Protection Division of the Attorney General's Office, brings this action under Section 17.47 of the DTPA "in the name of the state" as empowered and directed by the legislature. Dkt. 1-1 at 5[1]; Tex. Bus. & Com. Code § 17.47.[2] This right of action **cannot** be brought by anyone

---

[1] References to page numbers to any filings on this case's docket refer to ECF pagination.

[2] There is no requirement that even one consumer be harmed for the State to invoke its authority under Section 17.47, contrary to Google's unsupported implication that there must be "substantial" affected consumers for the State to take action. Dkt. 35 at 6-7; Tex. Bus. & Com. Code § 17.47.

else—it is within the purview of the State only. Tex. Bus. & Com. Code §§ 17.46(a), 17.47. In other words, the State is the only party with the substantive right to enforce Sections 17.46(a) and 17.47 of the DTPA, and therefore the State is the real party in interest. *Farrell Const. Co. v. Jefferson Par., La.,* 896 F.2d 136, 140 (5th Cir. 1990) ("The real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery.").

The relief available to the State when it brings an action under Section 17.47 of the DTPA further confirms that the State is the real party in interest. For example, Section 17.47(a) authorizes the State to obtain an injunction to restrain the use of the defendant's false, deceptive, and misleading acts or practices. *See, e.g.*, *Hood ex. rel. Mississippi v. Microsoft Corp.*, 428 F. Supp. 2d 537, 546 (S.D. Miss. 2006) (finding that the Mississippi attorney general sought injunctive relief on one of his claims and that such "prospective relief goes beyond addressing the claims" of previously injured persons and "is aimed at securing an honest marketplace, promoting proper business practices, protecting Mississippi consumers, and advancing Mississippi's interest in the economic well-being of its residents."). Section 17.47 further grants the State the authority to request civil penalties "to be paid to the state." Such penalties solely benefit the State.

The DTPA also authorizes *the court* to "make such additional orders or judgments as are necessary to compensate identifiable persons for actual damages or to restore money or property, real or personal, which may have been acquired by means of any unlawful act or practice." Tex. Bus. & Com. Code § 17.47(d). While such relief undoubtedly benefits

4

individuals, the Legislature's decision to grant courts the authority to order such relief does not mean that the State is not a real party in interest. *See, e.g.*, *Hood*, 428 F. Supp. 2d at 546 ("The fact that private parties may benefit monetarily from a favorable resolution of this case does not minimize nor negate plaintiff's substantial interest."); *New York v. Gen. Motors Corp.*, 547 F. Supp. 703, 706-07 (S.D.N.Y. 1982) (holding that the conclusion that the state was the real party in interest "is not altered by the State's decision to seek restitutionary relief and damages on behalf of those who [were defrauded]"); *Missouri ex rel. Webster v. Freedom Fin. Corp.*, 727 F. Supp. 1313, 1317 (W.D. Mo. 1989) (finding that the state was the real party in interest "in spite of the fact that many of the interests being asserted . . . are obviously actually those of people who have had business dealings in the past with the defendants."); *Maine v. First Jersey Securities, Inc.*, 655 F. Supp. 1370 (D. Me. 1987).

> **2.  Whether individuals have a limited ability to bring private claims under the DTPA is irrelevant to the Court's determination of the State's Motion.**

Google asserts that, because an individual may bring a cause of action under the DTPA, individuals are the real parties in interest in enforcement actions brought by the State. Dkt. 35 at 19. But Google's assertion is both factually and legally wrong.

As a matter of law, this claim is incorrect. Indeed, there is no case supporting Google's claim that simply because a statute offers avenues for relief to both the State as well as the State's citizens, the State is not a real party in interest when it chooses to pursue the relief available to it. Just the contrary. *See Veterans Support Org.*, 166 F. Supp. 3d 816;

*Eye Level Holdings, LLC et al.*, Case No. A-11-CA-178-SS. Moreover, individual claims under the DTPA are limited compared to the State's authority. For example, the State is authorized to bring a lawsuit against any person that engages in false, deceptive, or misleading acts or practices. Tex. Bus. & Com. Code §§ 17.46, 17.47. An individual, however, can only bring an action if he or she qualifies as a consumer under the statute, that is, only if the person "seeks or acquires by purchase or lease, any goods or services." *See Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex. 1980) ("Any person engaging in such deceptive practices may be subjected to a suit by the Consumer Protection Division of the Attorney General's Office, under Section 17.47. But, one who engages in deceptive acts may not be subjected to a private suit for damages under the Act unless the aggrieved party is a consumer.").

Even if the individual qualifies as a "consumer," he or she can only bring a claim if the deceptive conduct is specifically included in the "laundry list" of defined deceptive practices. *See* Tex. Bus. & Com. Code §§ 17.46(d), 17.50(a)(1)(A). The State, on the other hand, can bring an enforcement action to address any false, deceptive, or misleading act or practice as declared illegal by Section 17.46(a). *Id.* § 17.47(a).

Moreover, the State need only demonstrate a reasonable belief that a violation occurred and that the proceeding would be in the public interest; it need not demonstrate harm or reliance like a consumer must. *Compare* Tex. Bus. & Com. Code § 17.50(a)(1)(B) ("relied on by a consumer to the consumer's detriment") *with id.* § 17.47(a) (no reliance required); *David Jason West & Pydia, Inc. v. State*, 212 S.W.3d 513, 520 (Tex. App.—Austin

6

2006, no pet.) (holding that the State need only show that defendants "may be violating the DTPA" and that the State's action "was in the public interest"); *Avila v. State*, 252 S.W.3d 632, 638 (Tex. App.—Tyler 2008, no pet.) (holding that the harm caused by the defendants' actions are irrelevant under the DTPA, and therefore inadmissible).

Simply put, Google is incorrect that a consumer's ability to seek relief under the DTPA is in any way relevant to resolution of the State's Motion for Remand. The State is the real party in interest is based on well-established law, and this is so regardless of the mere availability of individual relief. Google's argument does not justify a different conclusion.

### 3. The great weight of authority confirms that this case should be remanded.

#### a. Google ignores longstanding black-letter law that the State is not a citizen.

Google admits that, in a matter just as this, "when an Attorney General sues on behalf of the State and for the State's own protection, the State is the party with a substantial interest in the outcome." Dkt. 35 at 17. Google's own admission affirms this case should be remanded to state court.

Google's attempt to distinguish *Texas v. Merck & Co.*, *Postal Telegraph Cable Co. v. Alabama*, and *Hood v. AstraZeneca Pharmaceuticals, LP* mischaracterizes the current action. Google would like this Court to believe the State is not the real party in interest, but rather, that it is enforcing the substantive rights of its citizens. Dkt. 35 at 16-18. But Texas sued to protect its own interests and punish Google for their unlawful conduct through this

enforcement action. Dkt. 1-1 at 7-8. As a result, the cases cited in the State's Amended Motion to Remand demonstrate that Texas is not a citizen for purposes of diversity jurisdiction. *See Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482 (1894); *Texas v. Merck & Co.*, 385 F. Supp. 2d 604 (W.D. Tex. 2005); *Hood v. AstraZeneca Pharm., LP*, 744 F. Supp. 2d 590 (N.D. Miss. 2010).

> **b. Every court that has examined citizenship when Texas brought a DTPA enforcement action concluded the case should be remanded.**

Two courts have previously addressed the question of whether removal of a DTPA claim brought by the Attorney General was proper, and both courts promptly remanded the case. *See Veterans Support Org.*, 166 F. Supp. 3d 816 ("*VSO*"); *Eye Level Holdings, LLC*, Case No. A-11-CA-178-SS (W.D. Tex. Mar. 11, 2011).

Google suggests *VSO* is dissimilar because that case involved claims under the DTPA as well as two other state statutes. Dkt. 35 at 15 (citing *VSO*, 166 F. Supp. 3d at 820). But nothing in *VSO* suggest that the State was the real party in interest for purposes of its DTPA claim only by virtue of two other statutes. Just the opposite: the opinion addressed each statute in turn and the separate bases for its finding that the State was the real party in interest under them all. *VSO*, 166 F. Supp. 3d at 820. *VSO* also specifically declined to follow the holding in *Bristol-Myers Squibb*. *Id.* at 821-22.

Google suggests that this Court should find *VSO* unpersuasive given that the plaintiff's conduct in that case caused harm to veterans, making it "particularly acute," while Google's deceptive practices only harmed the State and its consumers. Dkt. 35 at 14-

15 (citing *VSO*, 166 F. Supp. 3d at 818). While in *VSO*, the court acknowledged the specific need to protect veterans, nothing in that opinion suggests that ensuring a fair marketplace free from false advertising would be considered unimportant, or even less important— much less dispositive of the issue of diversity jurisdiction. *VSO*, 166 F. Supp. 3d at 819-22. The court in no way suggested that the State's role as the real party in interest is premised on which group of its citizens it is seeking to protect. *Id.*

Google also misses the mark when it challenges the *VSO* court's finding that civil penalties and injunctive relief are remedies unavailable to an individual consumer. Dkt. 35 at 15-16 (citing *VSO*, 166 F. Supp. 3d at 821). The injunctive relief provided to consumers under Section 17.50 is dramatically narrower from that which the court references and is found in Section 17.47. *Compare* Tex. Bus. & Com. Code § 17.50(b)(2) *with id.* § 17.47(a). Private plaintiff injunctions are governed under Tex. R. Civ. P. 683 and Tex. Civ. Prac. & Rem. Code Chapter 65. Moreover, Private plaintiff injunctions under Section 17.50 require a balancing of the equities and are specific to the restraint of the act that is prejudicial to the private plaintiff. Here, the State can seek broad injunctive relief, including temporary restraining orders, temporary injunctions, and permanent injunctions, that will protect the public at large from illegal conduct. Tex. Bus. & Com. Code § 17.47(a). This Court should, therefore, decline to indulge Google in its attempts to discredit the *VSO* court's holding.

### c. The courts' decisions in *VSO* and *Eye Level Holdings* are confirmed by a plethora of cases throughout the country.

Courts in other jurisdictions have almost uniformly concluded that when a state is seeking to enforce its consumer protection statutes, the state is the real party in interest and there is no diversity. *See, e.g.*, *Hood*, 428 F. Supp. 2d at 546 (holding that diversity jurisdiction did not exist because the state was a real party in interest when the Mississippi Attorney General sued Microsoft pursuant to its deceptive trade practices act and antitrust act for inflated software prices purchased seeking damages, penalties, injunctive relief, and refunds for the state and it is citizens)*; General Motors Corp.,* 547 F. Supp at 706-07 (finding diversity jurisdiction lacking and the State was more than a nominal party when New York Attorney General sued General Motors for restitution and injunctive relief regarding the company's fraudulent business practices related to the sale, warrantying and repair of certain vehicles)*; Freedom Fin. Corp.,* 727 F. Supp at 1317 (concluding the state was a real party in interest and the matter lacked diversity jurisdiction when the Attorney General sued under the Missouri Merchandizing Purchasing Act seeking injunctive and monetary relief, including damages for individual consumers); *Com. ex rel. Stumbo v. Marathon Petroleum Co., LLC*, 2007 WL 2900461, at *5 (E.D. Ky. Oct. 3, 2007) (finding that the state was the real party in interest when the attorney general sued pursuant to the Kentucky Consumer Protection Act and the state's anti-price gouging statute and was seeking an injunction, civil penalties, restitution, and disgorgement); *Ohio ex rel. Dann v. Citibank (South Dakota), N.A.*, No. 2:07 CV 1149, 2008 WL 1990363, at *4 (S.D. Ohio May 1, 2008)

(holding that the state was the real party in interest when it sued for injunctive relief and civil penalties pursuant to the Ohio Consumer Sales Practices Act); *Illinois v. SDS West Corp.*, 640 F. Supp. 2d 1047, 1053 (2009) (holding that the state suing under the Illinois' Consumer Fraud and Deceptive Business Practices Act had a quasi-sovereign interest and was the real party in interest even though the state sought restitution and only 250 consumers were directly injured); *Dep't of Banking & Sec. v. TitleMax of Delaware, Inc.*, No. 1:17-CV-02112, 2020 WL 127995, at *3 (M.D. Pa. Jan. 10, 2020)("Courts within the Third Circuit have routinely held that the state is the real party in interest in actions brought by state agencies to enforce consumer protection or similar statutes against out-of-state defendants.").

Google's Response is devoid of any valid reason why this Court should deviate from this great weight of caselaw that supports remand. Refusing to remand this litigation would open the doors of federal courthouses across the country for consumer protection cases that are bread-and-butter mainstays of state court dockets across the country. Google's attempt to invoke diversity jurisdiction is legally unfounded and would set a precent with potentially wide-ranging consequences, and should be rejected.

### d. The few cases Google cites have limited relevance or precedential value.

Google's argument primarily relies on three cases, all of which deal with different statutory frameworks and substantially different facts. The dearth of on-point cases by

Google speaks volumes: DTPA cases brought under Section 17.47 are not litigated in the federal courts under diversity jurisdiction purposes.

Google leans heavily on *Grace Ranch L.L.C. v. BP America Production Company*, 989 F. 3d 301 (5th Cir. 2021), but that case deals with a radically different statutory framework. *Grace Ranch* is distinguishable on many levels, not the least of which being the fundamental differences between the subject statutes. First, *Grace Ranch* deals neither with Texas law, nor a consumer protection statute. *See id.* Instead, at the center of *Grace Ranch* is a conservation law that is described in the very first sentence of the opinion as "unusual" and was seemingly crafted to always defeat diversity jurisdiction. *Id.* at 305. There, private entities could and did file suit to enforce the State of Louisiana's conservation law enforcement rights, and any injunction was required by the statute to be entered in favor of the Commissioner of Louisiana's Office of Conservation, a state body. *Id.* The State of Louisiana did not participate in the suit and was "not a proper party because it ha[d] not authorized landowners to sue in its name." *Id.* at 308. Here, the State is the only party to the lawsuit and is specifically authorized to bring suit in the name of Texas. Tex. Bus. & Com. Code § 17.46(a).

Citing to *Grace Ranch*, Google fixates on the notion that Texas cannot be a real party in interest because if it was, it would mean Texas would be a real party in interest to "all litigation, because the State always has an interest in enforcing its laws." Dkt. 35 at 5. This idea, however, is unfounded, and Google ignores *Grace Ranch*'s recognition of the general standard for State enforcement actions and the Court's distinctions as to why the facts

there were "unusual." *Grace Ranch,* 989 F. 3d at 309. *Grace Ranch* specifically points to the discussion in *Missouri Railway* of a state prosecuting a violation of civil law for a penalty as an instance when the state is a real party in interest. *Id.* (*citing Mo., Kan., & Tex. Ry. Co. v. Hickman*, 183 U.S. 53, 59 (1901) (noting that the State has a real interest if "the relief sought is that which inures to it alone" so that a judgment for the plaintiff "will effectively operate" in the State's favor.)). That has been the law for over 100 years and, as recognized by *Grace Ranch*, is still the law today. *Id.*

Similarly, Google ignores the court's discussion of relevant issues in *GMAC Mortgage Ohio v. GMAC Mortgage, LLC*, 760 F. Supp. 2d 741 (N.D. Ohio 2011). *GMAC Mortgage* evaluated an action brought to address conduct after the customer and bank entered into the mortgage agreement. *Id.* at 743-44. The court acknowledged that on its face, the state appeared to be seeking injunctive relief, declaratory relief, and statutory penalties, all of which would benefit the state in general. *Id.* at 747. But when the court looked more closely at the injunctive and declaratory relief the state was seeking, that relief was limited to those consumers who had already entered into transactions with the defendant, rather than substantive, prospective relief for all consumers. *Id.* at 748. The state was also seeking restitution for the same limited group of consumers. *Id.* at 747. Under those specific facts, the court determined that taking the state's complaint as a whole, the real beneficiaries of the state's "narrowly tailored prayer for relief" were the consumers under threat of foreclosure by the defendant. *Id.* at 749. In contrast, the State in the present case is seeking the type of prospective injunctive relief the court in *GMAC Mortgage*

13

acknowledged would benefit the state's consumers in general. *Id*. at 747-48; Dkt. 1-1 at 11-12.

The court in *GMAC Mortgage* also favorably cited to its sister court's decision in *Ohio ex rel. Dann v. Citibank (S. Dakota), N.A.*, No. 2:07 CV 1149, 2008 WL 1990363 (S.D. Ohio May 1, 2008), a case where the court found that the State was the real party in interest. *Id.* at 748-49. As summarized by the court in *GMAC Mortgage*, its sister court found the state was the real party in interest where "the OAG was seeking prospective injunctive and declaratory relief, along with civil penalties, in attempting to secure Ohio as an honest marketplace." *Id.* at 748. The facts in *Citibank* are much more analogous to the present case. *See Citibank*, 2008 WL 1990363, at *1.

It is also noteworthy that at least two other courts have considered and declined to extend *GMAC Mortgage* for the same reasons the State has urged in its Motion to Remand. *See Dep't of Banking & Sec. v. TitleMax of Delaware, Inc.*, No. 1:17-CV-02112, 2020 WL 127995, at *3 (M.D. Pa. Jan. 10, 2020) ("Courts in the Third Circuit have routinely held that the state is the real party in interest in actions brought by state agencies to enforce consumer protection or similar statutes against out-of-state defendants."); *Commonwealth of Kentucky ex rel. Brown v. Pocket Kings, Ltd.*, No. CIV. 14-27-GFVT, 2015 WL 1480311, at *7 (E.D. Ky. Mar. 31, 2015)(holding "the appropriate guiding principle is the one advocated for by the Commonwealth and articulated by the Supreme Court in *Missouri, K. & T. Ry. Co. of Kansas v. Hickman*, 183 U.S. 53, 59 (1901).").

14

Google also improperly characterizes *Bristol-Myers* as "instructive" since that case also dealt with an unfair and deceptive acts and practices statute. Dkt. 35 at 13 (citing *Hood ex rel. Mississippi v. Bristol-Myers Squibb Co.*, No. 1:12-CV-00179-GHD, 2013 WL 3280267, at *1 (N.D. Miss. Jun. 27, 2013)). However, the decision in *Bristol-Myers* rested on a Fifth Circuit case that was subsequently overturned by the United States Supreme Court, and the *Bristol-Myers* case was subsequently remanded to state court. Order Remanding Case to State Court, *Hood ex rel. Mississippi v. Bristol-Myers Squibb Co.* (N.D. Miss. July 24, 2014) (No. 1:12-CV-00179-GHD). Moreover, *Bristol-Myers* is distinguishable on its facts. First, it should be noted that the court in *Bristol-Myers* first concluded that the state *was* a real party in interest. *Bristol-Myers*, 2013 WL 3280267, at *7. However, the court looked at the extensive facts the state pleaded about the damages and harm incurred by users and concluded that the users were also real parties in interest. *Id*. at *6-7. Without any additional analysis, the court concluded that the case was removable on the basis of diversity jurisdiction. *Id*. at *7.[3] Unlike the complaint in *Bristol-Myers*, the State's petition in the present case clearly indicates that it is being brought in the interest of the public at

---

[3] It does not appear that the court considered any of the above-cited caselaw that almost uniformly hold that the mere fact that the state is also seeking restitution on behalf of users does not mean that the state is not the real party in interest. The court did not even mention its sister court's decision in *Hood ex. rel. Mississippi v. Microsoft Corp.*, 428 F. Supp. 2d 537, 546 (S.D. Miss. 2006), where under similar facts, the court held that diversity jurisdiction did not exist because the state was a real party in interest when the Mississippi Attorney General sued Microsoft pursuant to its deceptive trade practices act and antitrust act and sought penalties, injunctive relief, and refunds for the state and it is citizens.

large, and not to seek restitution or damages for specific individuals. Dkt. 1-1 at 6, 8-13. Indeed, the Texas Attorney General can *only* bring an enforcement action on behalf of the State, not any individual consumer. Tex. Bus. & Com. Code §§ 17.47(a), 17.47(h)

## B.  The State is authorized to seek a variety of relief under Section 17.47.

Google's remaining argument is to focus myopically on the relief sought in this matter. Dkt. 35 at 14-17. This case is still in the pleading stage. Of course the State would plead "such other and further relief to which it is entitled," as the State is entitled to a plethora of relief and has not yet had the benefit of initial disclosures, let alone full discovery. The State should not be limited to anything less than the relief it is statutorily entitled, nor should it be removed to an improper jurisdiction based on Google's spurious arguments based on mischaracterizations of the law. Under Section 17.47, the State is entitled to seek injunctive relief in the form of temporary restraining orders, temporary injunctions, permanent injunctions (including *ex parte* injunctive relief), and civil penalties, including civil penalties for violations of injunctive terms under the statute. Tex. Bus. & Com. Code §§ 17.47(a), 17.47(c), 17.47(e). Additionally, under Section 17.47(d) "[t]he *court* may make such additional orders or judgments as are necessary to compensate identifiable persons for actual damages . . . ." (emphasis added). But that is up to the court, and only where identifiable persons have been actually damaged.

The relief sought by the State here is entirely irrelevant. As detailed throughout this Reply, the State is the only party authorized to bring a Section 17.47 claim, and as such, it is the only party authorized to seek the remedies allowed by Section 17.47. Tex. Bus. &

Com. Code § 17.47. Section 17.47 mentions the Consumer Protection Division or the "division" no less than 11 times throughout, only re-affirming these actions are in the name of the State, regardless if damages are provided to consumers by the court. Accordingly, the Court should not be distracted by Google's misleading focus on boilerplate language in the State's prayer for relief, and this matter should be remanded.

## V.   CONCLUSION

Google wants the Court to ignore black-letter law that the State is not a citizen for diversity jurisdiction purposes. *Moor*, 411 U.S. at 717. But Google has not demonstrated any valid arguments that the Court should set aside this foundational principle. That is because this is a garden-variety DTPA state enforcement action, one that belongs in Texas state court. The State is acting under its legislatively authorized power to bring this action, in its own name, to protect all Texans from false, deceptive, and misleading conduct and ensure a fair and just marketplace. This matter never should have been before this Court, and as a result, the State has been forced to expend significant resources fighting for remand to the proper venue. As such, for the reasons outlined here and in its Motion for Remand, the State respectfully requests the Court remand this matter to the 457th Judicial District Court of Montgomery County, Texas, and to award reasonable costs and fees to the State for defending this unnecessary removal. *See, e.g.*, *Eye Level Holdings*, Case No. A-11-CA-178-SS (W.D. Tex. Mar. 11, 2011) (awarding the State of Texas $1,000 in fees for defending against the defendants' unnecessary removal).

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN E. COWLES
Deputy Attorney General for Civil Litigation

STEVEN ROBINSON
Division Chief, Consumer Protection
Division

*/s/Christopher Hilton*
**CHRISTOPHER D. HILTON**
Attorney-in-Charge
Texas State Bar No. 24087727
Southern Dist. Bar No. 3029796
Christopher.Hilton@oag.texas.gov
**COURTNEY CORBELLO**
Assistant Attorney General
Texas State Bar No. 24097533
Southern Dist. Bar No. 3089117
Courtney.Corbello@oag.texas.gov
**CAROLINE MERIDETH**
Assistant Attorney General
Texas Bar No. 24091501
Southern District Bar No: 3555429
Caroline.Merideth@oag.texas.gov
**CHRISTIN COBE VASQUEZ**
Assistant Attorney General
Texas State Bar No. 24074047
Southern District Bar No. 1125898
Christin.Vasquez@oag.texas.gov
**RICK BERLIN**
Assistant Attorney General

18

Texas Bar No. 24055161
Southern District Bar No: 754520
Rick.berlin@oag.texas.gov

Office of the Attorney General
Consumer Protection Division
PO Box 12548, MC-010
Austin, Texas 78711-2548
(512) 463-2185
(512) 473-8301 (facsimile)

**_Attorneys for the State of Texas_**

**CERTIFICATE OF SERVICE**

I certify that on the 21st day of June 2022, *The State of Texas' Reply to Defendant's Motion to Remand Response* was served on Defendant, Google LLC, by and through its attorneys of record via the Court's CM/ECF system.

*/s/ Christopher Hilton*
CHRISTOPHER HILTON