Case 4:22-cv-00636   Document 46   Filed on 01/05/23 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
January 05, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STATE OF TEXAS, § § Plaintiff, § VS. § GOOGLE LLC, § § Defendant. § § § § § | CIVIL ACTION NO. 4:22-CV-636 |

## MEMORANDUM OPINION AND ORDER REMANDING CASE

Before the Court is a motion to remand filed by the plaintiff, the State of Texas ("Texas") (Dkt. 34). After careful consideration of the pleadings, the entire record, and the applicable law, the Court **GRANTS** the motion to the extent that it seeks a remand to state court but **DENIES** Texas's request for attorney's fees and costs. This case is **REMANDED** to the 457th Judicial District Court of Montgomery County, Texas.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Texas sued the defendant, Google LLC ("Google"), in Texas state court under the Texas Deceptive Trade Practices Act ("DTPA"), alleging that Google included misleading personal endorsements of its Pixel 4 smartphone in radio advertisements that ran in the Dallas/Fort Worth and Houston markets. (Dkt. 1-1 at pp. 7–11).

According to Texas, Google contracted with iHeartMedia, the largest owner of radio stations in the United States, to have iHeartMedia's disc jockeys record and broadcast advertisements for Google's new Pixel 4 smartphone. (Dkt. 1-1 at p. 7). Texas alleges that

---
[1] The state-court cause number is 22-01-00731.

Google required the iHeartMedia disc jockeys to read a script that included "a first-person account of using the Pixel 4[,]" particularly the Pixel 4's new "Night Sight Mode" and "Google Assistant" features. (Dkt. 1-1 at pp. 7–8). A "typical script" created by Google for the disc jockeys read:

> The only thing I love more than taking the perfect photo? Taking the perfect photo at night.
>
> With Google Pixel 4 both are a cinch.
>
> It's my favorite phone camera out there, especially in low light, thanks to Night Sight Mode.
>
> I've been taking studio-like photos of everything . . . my son's football game . . . a meteor shower . . . a rare spotted owl that landed in my backyard. Pics or it didn't happen, am I right?
>
> Pixel 4 is more than just great pics. It's also great at helping me get stuff done, thanks to the new voice activated Google Assistant that can handle multiple tasks at once.
>
> I can read up on the latest health fads, ask for directions to the nearest goat yoga class (yes, that's a thing), and text the location to mom hands-free . . .
> Dkt. 1-1 at p. 8.

Texas alleges that the scripted endorsements were misleading because, when the advertisements were recorded, the Pixel 4 had not been released and the disc jockeys had not received sample Pixel phones in advance. (Dkt. 1-1 at pp. 9–10). The advertisements, in other words, amounted to "personal endorsement[s] of a product that had never been seen, touched, or used by the endorser[s.]" (Dkt. 1-1 at p. 9).

The Consumer Protection Division of the Texas Attorney General's Office filed this lawsuit in Texas state court under Section 17.47 of the Texas Business and Commerce Code ("Section 17.47"), accusing Google of violating several provisions of the DTPA and

engaging in conduct described as unfair and deceptive in Federal Trade Commission ("FTC") regulations that guide interpretation of the DTPA in cases brought under Section 17.47. (Dkt. 1-1 at pp. 11–13). *See* Tex. Bus. & Com. Code §§ 17.46(b), 17.46(c)(1); *see also* 16 C.F.R. § 255.1. Texas seeks prospective injunctive relief and civil penalties under Section 17.47 and attorney's fees under Section 402.006 of the Texas Government Code. (Dkt. 1-1 at pp. 5, 13–15).

Google removed the case to this Court under the diversity jurisdiction statute, 28 U.S.C. § 1332. (Dkt. 1 at p. 1).

## LEGAL STANDARD

A defendant may remove to federal court a state-court civil action over which the federal court would have original jurisdiction. 28 U.S.C. § 1441(a); *see Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007). Because it implicates important federalism concerns, removal jurisdiction is strictly construed. *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921–22 (5th Cir. 1997). Any doubts concerning removal must be resolved in favor of remand, *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000), and the federal court "must presume that a suit lies outside [its] limited jurisdiction." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The removing party bears the burden of establishing by a preponderance of the evidence that removal is proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

The diversity jurisdiction statute provides that federal courts have original jurisdiction over civil actions where the parties are diverse and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a).

Diversity of citizenship exists between parties if each plaintiff has a different citizenship from each defendant. *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1258 (5th Cir. 1988). "But when a State is party to a lawsuit, or is the real party in interest, diversity of citizenship does not exist." *Grace Ranch, L.L.C. v. BP America Production Co.*, 989 F.3d 301, 307 (5th Cir. 2021). "The burden of proving that complete diversity exists rests upon the party who seeks to invoke the court's diversity jurisdiction." *Getty Oil*, 841 F.2d at 1259. The citizenship of the parties "must be *distinctly* and *affirmatively* alleged." *Id*. (quotation marks omitted; emphasis in *Getty Oil*).

## ANALYSIS

Google contends that removal to this Court was proper, despite Texas being the only plaintiff, because "Texas is a nominal party whose presence should not be considered for purposes of determining whether diversity jurisdiction exists." (Dkt. 35 at p. 8). "The real parties in interest[,]" Google argues, "are a small group of alleged and unidentified Texas consumers who heard specific advertisements two-and-a-half years ago and allegedly may have been induced to purchase phones that radio DJs suggested they had used." (Dkt. 35 at p. 8).

The Court disagrees. Texas is the real party in interest and not just a nominal party.

A. *Determining the real party in interest*

Texas and Google both cite *Farrell Construction Co. v. Jefferson Parish, Louisiana*, 896 F.2d 136, 140 (5th Cir. 1990), for the proposition that "[t]he real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." (Dkt. 34 at p. 12; Dkt. 35 at p. 19). *Farrell*

further instructs that, "[c]onversely, a party not possessing a right under substantive law is not the real party in interest with respect to that right and may not assert it." *Farrell*, 896 F.2d at 140. "A federal court sitting in diversity must look to state law to determine which party holds the substantive right." *Id*.

The general principles set out in *Farrell* are consistent with the analysis employed by numerous well-reasoned district court opinions from several different circuits that have specifically examined whether a state is the real party in interest when a state official—typically, as in this case, the state's attorney general—brings an action under the state's consumer protection statute.² Under the principles articulated in these cases, courts consider the complaint as a whole to determine whether the state has a "substantial stake in the outcome of the case." *See, e.g., Ohio ex rel. Dann v. Citibank (South Dakota), N.A.*, No. 2:07-CV-1149, 2008 WL 1990363, at *3–4 (S.D. Ohio May 1, 2008); *Commonwealth ex rel. Stumbo v. Marathon Petroleum Co., LLC*, No. 3:07-CV-30, 2007 WL 2900461, at

---

² Google argues that the previously cited *Grace Ranch* case controls this case. The Court disagrees and finds *Grace Ranch* distinguishable. *Grace Ranch* did not deal with a state attorney general suing in the name of the state pursuant to a specific grant of authority contained in a consumer protection statute. Rather, it dealt with a single private landowner suing two other private parties under an "unusual" Louisiana statute that "allows citizen suits to enforce state conservation laws" but requires "any injunction the citizen might obtain [to] be entered in favor of the Commissioner of Louisiana's Office of Conservation." *Grace Ranch, L.L.C. v. BP America Production Co.*, 989 F.3d 301, 305 (5th Cir. 2021). The landowner, Grace Ranch, sued on its own behalf to obtain environmental remediation of its own property, and it was not authorized by the statute to sue in the state's name. *Id*. at 307–09. No state official played any part in the *Grace Ranch* litigation. The state's only meaningful connection to the litigation was "the possibility that the federal court [could] issue an injunction [substituting] the Commissioner for the original plaintiff." *Id*. at 310. The Fifth Circuit held that that possibility—which was not a certainty—was not enough to make the state a real party in interest: "Perhaps such a last-minute entrance by the Commissioner would defeat diversity jurisdiction. It is hard to see, however, why that contingency would affect jurisdiction now, when it is far from certain that the Commissioner will ever enter the case." *Id*. Those simply are not the facts here.

\*3–4 (E.D. Ky. Oct. 3, 2007)); *Hood ex rel. Mississippi v. Microsoft Corp.*, 428 F. Supp. 2d 537, 546 (S.D. Miss. 2006) ("[V]iewing the complaint as a whole, this court is persuaded that plaintiff Hood has a 'substantial stake' in the outcome of this case. . . . In sum, this court concludes that the State of Mississippi is the real party in interest in this litigation."); *see also Commonwealth of Virginia v. Supportkids Services, Inc.*, No. 3:10-CV-73, 2010 WL 1381420, at \*3–4 (E.D. Va. Mar. 30, 2010) (collecting cases) ("The appropriate question is whether the complaint, viewed as a whole, gives the state a substantial stake in the outcome of the case."). The factors considered under this analysis are: (1) whether the state statute under which the action was brought grants the attorney general specific statutory authority to bring the suit in the name of the state; (2) whether the relief sought is injunctive so as to regulate business conduct; (3) whether any civil penalties will go to the state treasury; and (4) whether any identifiable individual consumers will be granted redress. *Citibank*, 2008 WL 1990363 at \*3; *Marathon*, 2007 WL 2900461 at \*2–5. Here, the factors weigh heavily in favor of the conclusion that Texas is the real party in interest.[3]

---

[3] Even assuming that Texas, which is the only plaintiff, is not the real party in interest, Google has not satisfied its burden to prove that complete diversity exists. The parties' filings do not name any other possible plaintiff, let alone distinctly and affirmatively allege that plaintiff's citizenship. *Cf. Louisiana v. Union Oil Co. of California*, 458 F.3d 364, 365–67 (5th Cir. 2006) (the state and the parish school board bringing suit on the state's behalf were both named plaintiffs, so diversity jurisdiction would have existed had the state been a nominal party); *Grace Ranch*, 989 F.3d at 307–08 (the lawsuit was brought by a private landowner who was a Louisiana citizen). In its notice of removal, Google contends that the group of radio listeners who it argues are the real parties in interest consists of "only Texas citizens," but its contention, to the extent that it has any basis, seems to improperly equate citizenship with residency. (Dkt. 1 at p. 2). "It is important to distinguish between citizenship and residency, because a 'citizen of one state may reside for a term of years in another state, of which he is not a citizen; for, citizenship is clearly not co-extensive with inhabitancy.'" *Simon v. Taylor*, 455 Fed. App'x 444, 446 n.2 (5th Cir. 2011) (quoting

i.  The Texas Attorney General's statutory authority

The Court must first examine whether the DTPA grants the Texas Attorney General's Office specific statutory authority to bring this suit in the name of the state. The DTPA unequivocally does so.

The DTPA provides that:

> Whenever the consumer protection division [of the Texas Attorney General's Office] has reason to believe that any person is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful by [the DTPA], and that proceedings would be in the public interest, the division may bring an action in the name of the state against the person to restrain by temporary restraining order, temporary injunction, or permanent injunction the use of such method, act, or practice.
> Tex. Bus. & Com. Code § 17.47(a).

The DTPA further provides that, in addition to injunctive relief, the Texas Attorney General's Office "may request, and the trier of fact may award, a civil penalty to be paid to the state in an amount of . . . not more than $10,000 per violation[.]" Tex. Bus. & Com.

---

*Bingham v. Cabot*, 3 U.S. 382, 383 (1798)); *see also MidCap Media Finance, L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) ("Citizenship requires not only residence in fact but also the purpose to make the place of residence one's home.") (quotation marks and brackets omitted). In other words, even if Google were to show that Texas is a nominal party, the Court cannot assume that the real parties in interest are diverse from Google; Google must prove that. *See Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988) ("These rules are straightforward, and the law demands strict adherence to them."). Moreover, the Court also cannot assume that the claims of any single radio listener would satisfy the diversity jurisdiction statute's amount-in-controversy requirement; Google must prove that as well. *See Louisiana Independent Pharmacies Association v. Express Scripts, Inc.*, 41 F.4th 473, 480 (5th Cir. 2022) ("Under well-settled principles of diversity jurisdiction, if one or more member pharmacies brought this lawsuit, at least one would have to satisfy the $75,000 amount in controversy requirement. Critically, such a group could not aggregate their separate and distinct claims against Express Scripts to satisfy the amount in controversy requirement.") (citing *Exxon Mobil Corp. v. Allapattah Services*, 545 U.S. 546, 558–59 (2005) and *Snyder v Harris*, 394 U.S. 332, 338 (1969)). In any event, Texas is the real party in interest, as the Court discusses in the remainder of this opinion.

Code § 17.47(c).

In this suit, Texas seeks prospective injunctive relief barring Google from engaging in certain practices that are described as unfair and deceptive in the DTPA itself and in FTC regulations that guide interpretation of the DTPA in cases brought under Section 17.47. (Dkt. 1-1 at pp. 5, 13–15). *See* Tex. Bus. & Com. Code §§ 17.46(b), 17.46(c)(1); *see also* 16 C.F.R. § 255.1. Texas also seeks a court order requiring Google "to pay civil penalties not to exceed $10,000 per violation of the DTPA to the State of Texas[.]" (Dkt. 1-1 at p. 15).

The DTPA expressly allows the Texas Attorney General's Office to bring this suit in the name of the state. Notably, *only* the Texas Attorney General's Office may invoke Section 17.47; individual consumers seeking relief under the DTPA must sue under Section 17.50 of the Texas Business and Commerce Code. This factor weighs in favor of the conclusion that Texas is the real party in interest.

ii. The relief sought

The Court must next examine whether the relief sought by the Texas Attorney General's Office is injunctive so as to regulate business conduct. The Court concludes that it is.

This factor weighs in favor of the conclusion that the state is the real party in interest if the relief sought is the "type of prospective relief [that] goes beyond addressing the claims of previously injured organizations or individuals" and is "aimed at securing an honest marketplace, promoting proper business practices, protecting [the state's] consumers, and advancing [the state's] interest in the economic well-being of its residents."

*Microsoft*, 428 F. Supp. 2d at 546; *see also Marathon*, 2007 WL 2900461 at *2–5 (holding that the state was the real party in interest when its attorney general sought an injunction prohibiting the defendants from violating the state's Anti-Price Gouging Act); *New York ex rel. Abrams v. General Motors Corp.*, 547 F. Supp. 703, 705–07 (S.D.N.Y. 1982) (holding that the state was the real party in interest when its attorney general sought an injunction under a state consumer protection statute requiring the defendant automaker to disclose both known defects and the existence of any significant new part, component, or system design in its vehicles). In its pleading, Texas seeks a prospective injunction barring Google from engaging in certain practices that are described as unfair and deceptive in the DTPA itself and in FTC regulations that guide interpretation of the DTPA in cases brought under Section 17.47. (Dkt. 1-1 at pp. 5, 13–15). *See* Tex. Bus. & Com. Code §§ 17.46(b), 17.46(c)(1); *see also* 16 C.F.R. § 255.1. Such injunctive relief is the type of prospective relief that goes beyond addressing the claims of previously injured organizations or individuals and is aimed at securing an honest marketplace, promoting proper business practices, protecting Texas's consumers, and advancing Texas's interest in the economic well-being of its residents. *See Abrams*, 547 F. Supp. at 705 ("The purpose of seeking this wide-ranging relief is not merely to vindicate the interests of a few private parties. Rather, it is to take a step toward eliminating fraudulent and deceptive business practices in the marketplace.").

This factor weighs in favor of the conclusion that Texas is the real party in interest.

### iii. Civil penalties

The Court must next examine whether any civil penalties will go to the state

treasury. By all indications, they will.

In its pleading, Texas, the only named plaintiff, asks that the civil penalties it seeks be paid "to the State of Texas[.]" (Dkt. 1-1 at p. 15). This is consistent with the statutory language of the DTPA, which provides that civil penalties obtained under Section 17.47 are "to be paid to the state[.]" Tex. Bus. & Com. Code § 17.47(c).

This factor weighs in favor of the conclusion that Texas is the real party in interest.

   iv. <u>Redress for individual consumers</u>

Finally, the Court must examine whether any identifiable individual consumers will be granted redress. This factor weighs in favor of the conclusion that Texas is the real party in interest.

Section 17.47 allows the Texas Attorney General to sue for "such additional orders or judgments as are necessary to compensate identifiable persons for actual damages or to restore money or property, real or personal, which may have been acquired by means of any unlawful act or practice." Tex. Bus. & Com. Code § 17.47(d). There are indications that Texas will seek redress for individual consumers in this case. Texas's pleading states that "the potential relief sought by the State in this action includes . . . consumer redress[;]" and the pleading further notes that "the Attorney General is authorized to seek . . . redress for consumers[.]" (Dkt. 1-1 at p. 5). Furthermore, Texas's prayer for relief asks for "such other and further relief to which it is justly entitled." (Dkt. 1-1 at p. 16). However, there are also indications that Texas will only seek prospective injunctive relief and civil penalties. Prospective injunctive relief and civil penalties are the only types of relief (apart from attorney's fees) for which Texas's pleading specifically prays, and consumer redress

10 / 12

is only mentioned in the pleading's "Discovery Control Plan" and "Jurisdiction and Venue" paragraphs. (Dkt. 1-1 at pp. 5, 13–16).

Viewing Texas's pleading as a whole, the Court concludes that Texas seeks only prospective injunctive relief and civil penalties. However, even if the Court were to find that Texas will someday seek redress for individual consumers, this fact would not prevent the remand of this case. Assuming that Texas does seek restitution for particular individuals, it remains the real party in interest because the far greater part of Texas's pleading "seeks injunctive relief on [its] claims. This type of prospective relief goes beyond addressing the claims of previously injured organizations or individuals. . . . The fact that private parties may benefit monetarily from a favorable resolution of this case does not minimize nor negate [Texas's] substantial interest." *Microsoft*, 428 F. Supp. 2d at 546; *see also Supportkids*, 2010 WL 1381420 at *3–4 (collecting cases); *Marathon*, 2007 WL 2900461 at *5 ("While the Attorney General does also seek restitution on behalf of particular consumers, this is only one aspect of the wide-ranging relief sought, the substantial portion of which will benefit all Kentucky consumers."); *Abrams*, 547 F. Supp. at 706–07 ("This conclusion is not altered by the State's decision to seek restitutionary relief and damages on behalf of those who allegedly have been defrauded by GM. Recovery of damages for aggrieved consumers is but one aspect of the case. The focus is on obtaining wide-ranging injunctive relief designed to vindicate the State's quasi-sovereign interest in securing an honest marketplace for all consumers.").

   v. <u>Texas is the real party in interest.</u>

Having considered all of the factors discussed above, the Court concludes that Texas

is the real party in interest in this litigation. Even if its pleading can be construed as seeking restitution for individual consumers, the State of Texas itself has a substantial stake in the outcome of this case. This Court accordingly lacks subject matter jurisdiction over this case. *Grace Ranch*, 989 F.3d at 307 ("[W]hen a State is party to a lawsuit, or is the real party in interest, diversity of citizenship does not exist.").

## CONCLUSION

Texas's motion to remand (Dkt. 34) is **GRANTED** to the extent that it seeks a remand to state court.[4] This case is **REMANDED** to the 457th Judicial District Court of Montgomery County, Texas.[5] The Clerk is directed to provide a copy of this order to the parties. The Clerk is further directed to send a certified copy of this order via certified mail, return receipt requested, to the District Clerk of Montgomery County, Texas and the Clerk of the 457th Judicial District Court of Montgomery County, Texas.

Any other pending motions are **DENIED as moot**.

SIGNED at Houston, Texas on January 5, 2023.

                                               GEORGE C. HANKS, JR.
                                               UNITED STATES DISTRICT JUDGE

---

[4] Texas requests that the Court award it attorney's fees and costs on the ground that Google lacked an objectively reasonable basis for removing this case. (Dkt. 34 at p. 16). The Court **DENIES** that request. Although the Court disagrees with Google's reading of the existing caselaw, neither party has cited, and the Court could not find, any binding precedent specifically addressing the jurisdictional questions presented by this motion, though the *Farrell* and *Grace Ranch* cases provide some general guidance. *See CamSoft Data Systems, Inc. v. Southern Electronics Supply, Inc.*, 638 Fed. App'x 255, 261, 267 (5th Cir. 2015) ("[D]istrict court jurisdiction under § 116 was clearly unsettled at the time this case was removed to federal court[. W]e conclude that the district court did not abuse its discretion when it concluded that the defendants were objectively reasonable when they removed the case to federal court.").

[5] The state-court cause number is 22-01-00731.